# CHARLESTON.

## CROTHERS' ADM'R *v.* CROTHERS *et al.*

Submitted September 12, 1894—Decided February 1, 1895.

| | |
|---|---|
| 40 | 169 |
| 42 | 607 |
| 42 | 790 |

| | |
|---|---|
| 40 | 169 |
| 47 | 294 |
| 47 | 424 |

| | |
|---|---|
| 40 | 169 |
| 49 | 292 |

| | |
|---|---|
| 40 | 169 |
| 53 | 351 |

| | |
|---|---|
| 40 | 169 |
| 55 | 493 |

| | |
|---|---|
| 40 | 169 |
| f64 | 23 |

| | |
|---|---|
| 40 | 169 |
| 66 | 294 |

1. EVIDENCE—STATEMENTS OF DECEDENT.
   When a transfer of property has been made, a declaration by the transferrer that he is still the owner of the property, made after such transfer, is not admissible against the transferee.

2. EVIDENCE—STATEMENTS OF DECEDENT.
   Declarations of a deceased person, claiming ownership of specific property, are not competent evidence in favor of his administrators, or others claiming title under him, whether such declarations of ownership were made before or after the title of the adverse claimant commenced. *Masters* v. *Varner's Ex'rs*, 5 Gratt. 168.

3. EVIDENCE—COMPETENT WITNESSES.
   A person interested may give evidence against his own interest, both at common law and under section twenty three of chapter one hundred and thirty of the Code.

4. EVIDENCE—COMPETENT WITNESSES.
   The purpose of section twenty three of chapter one hundred and thirty of the Code, was to enlarge the competency of witnesses. It does not *per se* render any incompetent who are competent at common law. The exception therein does not create incompetency, but leaves the cases specified in it just as they were at common law.

5. EVIDENCE—COMPETENT WITNESSES.
   Children of a decedent, who are his distributees, are competent witnesses to prove a transfer by their father of personal estate in favor of the transferee.

6. EVIDENCE—COMPETENT WITNESSES.
   By common law a person is a competent witness in a case if the proceeding can not be used as evidence for him, though he may be interested in the question in issue, and may entertain wishes on the subject, and may even have occasion to contest the same question in his own case in a future suit. This rule has not been changed by section twenty three of chapter one hundred and thirty of the Code of 1891, as to the competency of a person to testify against the representatives of a deceased person in relation to a transaction had personally by the witness with the deceased person.

W. W. ARNETT for appellants, cited Code (1891) c. 130, s. 23, and cases there cited.

CALDWELL & CALDWELL for appellees, cited 149 Pa. St. 201; 28 W. Va. 460, 465 and 469; 27 W. Va. 455; 24 W. Va. 84; 33 W. Va. 243; 9 W. Va. 194 and 195; 29 W. Va. 294; 32 W. Va. 125 and 127; 5 Gratt. 168; 2 Blackford (Ind.) 461; 1 Bibb, (Ky.) 154; 1 Johns. (N. Y.) 159; 8 Johns. (N. Y.) 428; 10 Conn. 121; 1 Rice Ev. 542-543; 32 South Car. 359; 55 Hun. 593; 59 N. H. 507; 11 W. Va. 562-567; 28 W. Va. 463; 33 W. Va. 494; 17 W. Va. 691-692; 33 W. Va. 243; Code W. Va. c. 130, s. 23; 29 W. Va. 224, 234; 33 W. Va. 237, 243; 32 W. Va. 527, 539; 32 W. Va. 119, 125; 1 Greenl. on Ev. § 410; 24 W. Va. 72, 84; 20 S. C. 567, 573; 43 Mich. 208, 218; 54 N. Y. 389, 401; 10 Wend. 403; 37 W. Va. 38; 31 W. Va. 662; 28 N. J. 274, 277; 20 W. Va. 327; 37 W. Va. 60; 4 Gratt. 188; 2 Perry on Trusts, 2 Ed. § 891; 31 W. Va. 141; 35 W. Va. 480; 36 W. Va. 45; 27 W. Va. 642; 28 W. Va. 731; 31 W. Va. 571; *Ibid.* 141; 33 W. Va. 510; 35 W. Va. 731; 29 W. Va. 116; 32 W. Va. 44; 33 W. Va. 278; *Ibid.* 164, 165; 30 W. Va. 195; 31 W. Va. 591; 36 W. Va. 683.

BRANNON, PRESIDENT :

This was a chancery suit in the Circuit Court of Ohio county by the administrators of Samuel J. Crothers, deceased, against L. M. Crothers, to set aside a transfer purporting to have been made by said decedent to L. M. Crothers of certificates for ten thousand dollars stock of the Bank of the Ohio Valley, at Wheeling, and, the bill having been dismissed, the administrators appeal.

The grounds on which the plaintiffs base their prayer for the annulment of such transfer of stock are undue influence, fraudulent representation, and the mental imbecility, from old age, of Samuel J. Crothers, and the charge that the written transfer is a forgery.

Without giving the evidence, I may dismiss the first three grounds as unsustained by it; or, as would be more appropriate to say, there is no evidence to detail as to those grounds.

As to the allegation of forgery. The detail of evidence on this point could answer no purpose for future cases. The

only persons present at the execution of the transfer of stock besides Samuel J. Crothers, the father, and L. M. Crothers, a son, were Lizzie Crothers and Mrs. Dorrance, two of his daughters. The father did not sign the transfer with his own hand, but directed his son L. M. Crothers to sign his name to the formal transfer printed on the stock certificates. The two daughters are very definite in their evidence that on an occasion when L. M. Crothers was about to go to Wheeling the father suggested that he take the certificates with him to the bank in Wheeling, and have the transfer formally made on the stock book; that L. M. Crothers was disposed to postpone it, saying to his father that he was then confined to his bed and that another time would do; but the father, being in the seventy seventh year of his age and feeble, was urgent to have the transfer at once made, and caused his son to fill up and sign for him the written transfers. There is no showing to the contrary of the evidence of these two ladies. If they are to be believed, they clearly establish the transfer of the stock. W. B. Crothers, another son, and one of the administrators bringing this suit, says that after this alleged transfer his father stated that he had stock in the Wheeling bank, and could not account for the fact that he was getting no dividend upon it, thus negativing all idea that already the stock had been assigned to L. M. Crothers; but this evidence can avail nothing—First. because W. B. Crothers is not a competent witness as to a communication with the deceased, since he is a party plaintiff, and interested to secure this fund for distribution, part of it going to himself, outside of his liability for costs (*Seabright* v. *Seabright,* 28 W. Va. 463); and he also is giving a declaration of a party made after assignment to overthrow the title of the assignee of that party, *Casto* v. *Fry,* 33 W. Va. 44 (10 S. E. Rep. 799); and also because the self-serving declaration of Samuel J. Crothers is not admissible for himself or his estate, because it is a declaration in his own behalf (*Masters* v. *Varner's Ex'rs,* 5 Gratt. 168).

Mr. Dorrance states that the old gentleman stated to him that he had given L. M. Crothers this stock to make up a loss to him in the sale of a farm mentioned below. Now, this ad-

mission is admissible to sustain the transfer, because it is against the interest of the party making it, and not, like that made to William B. Crothers, going to sustain his title. I regard Dorrance's evidence as of great force, in corroboration of the evidence of Lizzie Crothers and Mrs. Dorrance. There is, in a legal point of view, no evidence against this positive evidence. There is a circumstance which, at first view, seems quite strong against the genuineness of the signature to the transfer; and it is this, that the two ladies present at the making of this signature say the old gentleman told his son, L. M. Crothers, to write his name so as to resemble his handwriting as nearly as he could do so, and that the signatures themselves bear the look of tremulousness of the old man's hand. Why, we may ask, did the old man wish his writing simulated? It would be natural that he should simply direct his son to write his name, and have his daughter witness it, as she did. The old man, too, could write himself, but he was feeble and in bed, and wrote with difficulty. He may have thought that, as his handwriting was known at the bank, it would be better to imitate it. This circumtance, I confess, is one which inspires suspicion; but it is only a circumstance, and not of a conclusive nature, and stands alone, without any evidence to be linked with it, and is overborne by the positive evidence above stated. If these ladies were not truthful, they would hardly have told this adverse fact. There is another circumstance, hardly worth the mention, in my judgment, and this is that Samual J. Crothers also transferred on the same date to L. M. Crothers some stock in an Ohio glass manufacturing company, and, in a suit in Ohio by those administrators to overthrow it for like causes with those on which this suit is based, L. M. Crothers made no defense. He says he knew not the contents of the complaint in that case, and he says and proves that he was advised by counsel not to defend, because the stock was of very little value, not worth the cost of attendance in defense of the suit, and might call upon him, if he were owner, to contribute as a stockholder to pay debts of the concern.

I think the Circuit Court was bound on the evidence to decide the case as it did, and find the transfer genuine. This

being so, we have nothing to do with the justice of the matter, as between the father and L. M. Crothers and the other children; but some good reasons appear. L. M. Crothers owned a farm, and his brother W. B. Crothers importuned him to sell it, but L. M. Crothers objected to doing so, when his father, at the instance of William B. Crothers, advised him to do so, and he did so against his will, and bought from his father with its proceeds stock in a Pittsburg bank, which broke, and left the stock a dead loss to L. M. Crothers, while the very farm he had unfortunately sold developed into an oil field (from which William B. reaped large returns) which but for his sale L. M. Crothers would have realized; and the old man, long before his death and the transfer of the Wheeling bank stock, declared he intended to make up this loss in some measure to the unfortunate son, and he carried out this settled purpose by the transfer of the stock in question. Moreover, when L. M. Crothers sold his farm, he moved upon a farm belonging to his father close by the home in which his aged father and mother and maiden sister lived, and worked it for their support, while all the others of his seven children went off to themselves. L. M. Crothers is a man fifty two years old, and for a number of years worked the farm and supported his father, mother and sister, and his father declared his kindness to him and his own obligation for it. So we see good reason for the transfer, which I mention as not only going to repel undue influence, false representation, and imbecility, but to negative what I think is the only matter of importance under the evidence; that is, the imputation of forgery of the transfer. The evidence is substantially on one side, that of the defendants. That being so, of course, we can not reverse. The burden to establish the basis on which the plaintiffs predicate their case, lying on them, they must establish it by full proof, not to say proof beyond reasonable doubt. I agree with what, from an opinion of Judge Paull in the case, seems to have been his view, that it is not a case of conflicting evidence, and therefore it seems hardly necessary to say that, if we treat it as a case of conflicting evidence, the opinion of the Circuit Court must stand. *Bartlett* v. *Cleavinger*, 35 W. Va. 719 (14 S. E. Rep. 273); *Prichard* v.

*Evans*, 31 W. Va. 141 (5 S. E. Rep. 461). Even if we regarded the conclusions to be derived from the evidence doubtful, as we do not, we could not reverse the court below. *Reger* v. *O'Neal*, 33 W. Va. 164 (10 S. E. Rep. 375). We must see that the court below erred plainly in weighing and deciding on the evidence.

As said above, the evidence of Lizzie Crothers and Mrs. Dorance makes it clear, if we believe them, that the transfer is not a forgery. But it is urged that they are incompetent as witnesses. They are not incompetent to give the evidence they gave at common law, as they are neither parties nor interested, because they give evidence to support the transfer, which takes the property away from distribution, in which they should share, and forever excludes them from any share in it. It is well settled that where a witness testifies against his interest, the rule that interest disqualifies does not apply. 1 Greenl. Ev. § 410. So the common law does not debar these witnesses. Then does the statute, section 23 chapter 130, Code? It does not. Its object was to widen, not to narrow, the competency of witnesses—to make those competent not competent before, and not to create or enact incompetency. It is often important to remember this in construing this statute so radically innovating on the law of evidence. *Gilmer* v. *Baker*, 24 W. Va. 84; *Page* v. *Whidden*, 59 N. H. 507. Its first clause is a revolution and reversal of the common-law rule excluding a witness because a party to the suit or interested in its event. It makes persons, so far as their being parties or interested would exclude them, competent. But the second clause contains exceptions to this sweeping declaration of competency, because it declares that no party to a suit, or any one interested in its event, or any person from, through or under whom such party or interested person derives any interest by assignment or otherwise, shall be examined, in regard to any personal transaction or communication between such person and a person deceased, insane, or lunatic, against the executor, administrator, heir, distributee, assignee, legatee, devisee or survivor of one deceased, or the assignee or committee of an insane person. This exception originates no new incompetency, but only

continues, in certain cases, the old incompetency of the common law; takes them out of the general enactments of the first clause of section twenty three. Opinion in *Kilgore's Adm'r* v. *Hanley*, 27 W. Va. 455.

Where the statute is a mere proviso or saving clause in the act abolishing the common-law disqualification of interest, it does not make incompetent such testimony as would be competent at common-law. Abb. Tr. Ev. 61. So, these two female witnesses, being competent by common law, are not made incompetent by the statute. In *Robinson* v. *Robinson*, 20 S. C. 567, 573, this view of such a statute is held, and that case is otherwise apposite in this case, as it holds that, in an action by an administrator to settle an estate, two distributees may prove the execution of a note by the deceased, with them as sureties, because testifying against their interest.

The following theory is relied upon by counsel as a reason for rejecting the evidence of Lizzie Crothers and Mrs. Dorrance: A month before the transfer of bank stock, Samuel J. Crothers conveyed to L. M. Crothers a farm for the consideration of fifteen thousand dollars, and the purchaser executed to Lizzie Crothers a note for ten thousand dollars, and to Mrs. Dorrance one for five thousand dollars, making up the fifteen thousand dollars. Those notes were gifts by the father to his daughters, and it is urged that this and the bank stock transfer are one common transaction, though a month apart, by which L. M. Crothers, Lizzie Crothers and Mrs. Dorrance stripped their old father of substantially all his remaining estate, to the injury of the remaining four children, and that we ought to treat both as one transaction, and thus make Lizzie Crothers and Mrs. Dorrance interested to sustain the transfer of bank stock, and thus exclude them as witnesses. For argument, say that they feel an interest in repelling the charge made in common against the deed from the father to his son L. M. Crothers, the gift of said purchase money to the daughters, and the transfer of the bank stock to L. M. Crothers; that the old man was imbecile, subjected to undue influence and misrepresentation—still the interest they feel is only a feeling, a bias going to their credit, and that interest, viewed in the strongest light, is only an interest in the ques-

tion involved in this suit, for they have no legal interest in its event. The decision in this suit could not be given in evidence against them or for them, in a suit involving their right to the notes. They get or lose nothing under said transfer. To exclude the witness, he must have an interest to be affected by the result of the suit by force of the adjudication, and though he may feel a bias in the struggle, and may even be interested in the question litigated, and may have to litigate the same question in future litigation of his own, that does not exclude him. *Gilmer* v. *Baker*, 24 W. Va. 72; *Masters* v. *Varner*, 5 Gratt. 168; *Clements* v. *Kyles*, 13 Gratt. 477; 1 Greenl. Ev. § 389. The interest, to exclude, must be not only in the result of the suit, but must be a present, certain, vested interest, not an interest uncertain, or contingent, though it matters not how small the interest may be. 1 Greenl. Ev. §§ 390, 391.

To exclude a witness, he must be interested in favor of the party calling him. *Sims* v. *Givan*, 2 Blackf. 461; *Kennedy* v. *Barnett*, 1 Bibb, 154. What benefit can flow to these witnesses from L. M. Crother's success? So far as actual interest, in a legal point of view is concerned, it is against him.

As pertinent, not to the point of competency, but to the grounds for the charge of undue influence and confederation of these three parties, and going to repel them, I will add that the gift to Lizzie was because she was a maiden lady forty six years of age, broken in health and helpless, and had spent many years living with and caring for her aged father and mother. All the other children, except Mrs. Dorrance, who was poor, were well situated in the world and independent. Why should she not be provided for? The provision for her came, not from undue influence, fraud and corruption, but from the strongest emotions of the father's heart to provide for the woeful years of his daughter, when both father and mother would be gone. The old man's heart was beating faintly under the weight of years and disease, but its pulsations were strong to shield a dependent daughter from the chills of biting poverty Cold would have been his heart had he departed without doing this high duty! In this act a judge can not see fraud and vice, but noble action.

If it do some prejudice to other children in paltry dollars, so it be the old man's free act, a court can not criticise it on that score.    He can make an unjust disposition if he choose. *Martin* v. *Thayer*, 37 W. Va. 38 (16 S. E. Rep. 489).

Decree affirmed.