# CHARLESTON.

TROWBRIDGE *v.* STONE'S ADM'R.

Submitted June 10, 1896—Decided Nov. 25, 1896.

1. WITNESSES—COMPETENCY OF WITNESS—INSANE PERSONS.

By section 23 of chapter 130 of the Code no person offered as a witness in any civil suit is to be excluded by reason of his interest in the event of the suit, but he shall not be examined as to any personal transaction or communication between such witness and a person at the time of such examination insane as against such insane person or his committee.

2. WITNESSES—COMPETENCY OF WITNESS—STATUTE OF LIMITATIONS—INSANE PERSONS.

This was a suit brought under section 22 of chapter 87 of the Code by plaintiff, M. J. Trowbridge, a person of unsound mind. by her next friend, against the administrator of W. J. Stone, deceased, her committee, to surcharge and falsify the report of the settlement of the account of the committee made and confirmed in pursuance of chapter 87. The testimony of interested non-expert witnesses, the children and heirs of the deceased committee, was offered to prove that they had observed and knew the mental and physical condition of plaintiff, and the amount and value of the labor performed by her for her committee, and that she was too weak, both mentally and physically, to perform for him any labor of any value. Such testimony was properly rejected as incompetent, because it necessarily called out from such witnesses transactions or communications of the insane plaintiff in which these witnesses were interested against her to some extent and in some way participated, within the meaning and policy of the statute excluding them.

3. STATUTE OF LIMITATIONS—SUITS TO SURCHARGE OR FALSIFY.

There is no statute of limitation fixing a time within which such suits to surcharge or falsify must be brought.

4. LACHES—EQUITABLE DEFENSE—*Non Compos* PERSONS.

*Laches*, being the inexcusable delay in asserting a right, is an equitable defense, which implies knowledge or means of knowing one's rights, depending upon the particular facts of each case and therefore can not be imputed to one of unsound mind.

Neil J. Fortney for appellant, cited Code, c. 87, s. 22; Code, c. 130, s. 23; 1 Bart. Chy. Prac. 119; 23 W. Va. 108; 21 W. Va. 469; 17 Gratt. 96; 26 W. Va. 207; 14 W. Va. 88; 11 S. E. Rep. 548, 552; 17 S. E. Rep. 701, 704.

P. J. Crogan for appellee, cited 21 W. Va. 469; 23 W. Va. 100; 17 Gratt. 96; 1 Bart. Chy. Pr. 119; 13 Pet. 381; Code, c. 104, s. 16; 16 N. J. Eq. 240-2; 12 Am. & Eng. Enc. Law, 554; 2 Yerg. (Tenn.) 193; 152 U. S. Sup. C. Rep. 412; 3 Leigh, 376; 26 W. Va. 175; 21 Gratt. 712; Code, c. 130, s. 23; 11 W. Va. 562; 31 W. Va. 659; 28 W. Va. 412; 11 S. E. Rep. 542; 17 S. E. Rep. 701; 3 L. R. A. 599; 95 N. Y. 316.

Holt, President:

On appeal from a decree of the Circuit Court of Preston county entered in favor of plaintiff on the 3d day of April on a bill to surcharge and falsify the *ex parte* settlement of the accounts of the intestate of Charles C. Stone as the committee of plaintiff. On the ―― day of ――, Samuel R. Trowbridge died, intestate, leaving several heirs and a considerable estate. Among the heirs was the plaintiff, an imbecile daughter, thirty years of age, suing by her sister and next friend in this suit, Martha Parks, and Harriet Stone, the wife of Charles C. Stone. Charles C. Stone, the son-in-law, qualified as the administrator of the estate of Samuel R. Trowbridge, deceased; also as the committee of his imbecile sister-in-law, whom he took into his family, and supported during his life. He charged himself, on October 11, 1865, as her committee, with having received in cash from her father's estate the sum of one hundred and twenty dollars and fifty three cents, and on the 1st day of January with six hundred and ninety six dollars and twenty one cents with twenty seven dollars and eighty five cents interest to January 1, 1878, as cash received for her from the sale of Samuel G. Trowbridge's land. On the 28th day of January, 1871, James W. Parks, one of the commissioners of the county court, made an *ex parte* settlement of the account of the estate of Margaret J. Trowbridge with William J. Stone, her committee, debiting her estate with

her board and clothing from January 1, 1865, to January 1, 1871, and crediting her with the items of one hundred and twenty dollars and fifty three cents and six hundred and ninety six dollars and twenty one cents already mentioned, and reporting a balance due the ward of two hundred and sixty four dollars and ninety eight cents, with interest from that date. To this report there was no exception, and the county court, by order of April 10, 1871, approved and confirmed the same. The second and last settlement was made before the same commissioner on the 30th of December, 1872, when he reported a balance due the ward's estate of ninety three dollars and eighty eight cents, with interest from the 1st day of January, 1873. This report also was approved and confirmed by the county court by order entered on the 11th day of March, 1873. She remained in the family of her committee until his death, in the year 1883, and after that in the family of the widow, Louisa Stone, her sister, until the sister's death, in 1891. She was then sent to the county poorhouse, where she remained until April, 1892, when her sister and next friend, Martha Parks, took her to her home, and has since kept Margaret J. in her family. In November, 1892, Margaret, as a person of unsound mind, filed her bill by Martha Parks, her next friend, against Charles C. Stone as administrator of the estate of William J. Stone, deceased, surcharging and falsifying his accounts as her committee. The substance of the bill is that she rendered services which at the least paid for her board and clothes, and that her estate was, therefore, wrongfully debited with these charges made by and allowed to her committee. C. C. Stone, the administrator, answered that she was not in good health, was neither able nor willing, nor had she the mental capacity, to do any work that required ordinary intelligence and skill; that during the whole time she was too weak, both mentally and physically, to perform any work for William J. Stone, her committee, of any value; and that his small charges for board and clothes were reasonable and just. Defendant also alleges that the cause of action, if any, did not accrue within five years next before the bringing of this suit. A great deal of evidence was taken, none

of which is in this record, and the cause was referred to Commissioner D. M. Wotring to report on the matters in controversy. He made and filed his report, in which he says that William J. Stone had in his hands, of his ward's money, the sum of eight hundred and sixteen dollars and seventy four cents, that the interest thereon from year to year, together with the labor performed by the plaintiff for William J. Stone and his family, as shown by the evidence taken, was amply sufficient to pay and did pay for the boarding, clothing, and maintenance of his ward; and that the various items charged by the committee and allowed by the county court commissioner against the *corpus* of plaintiff's estate were erroneous, and are disallowed. After making some deductions, he finds a balance due plaintiff of seven hundred and fifty six dollars and ninety four cents, to bear interest from the 11th day of December, 1893. The report was excepted to, specifying the sum allowed as barred by statute of limitations, but the court, by decree of April 3, 1894, overruled the same, and entered a decree for the sum found and reported by the commissioner. During the progress of the cause before the commissioner the defendant offered to introduce as witnesses Laura E. Williams and four others, children and heirs-at-law of William J. Stone, defendant's intestate, to prove that they lived in intestate's family during the time that plaintiff lived in it; that they had full opportunity and did observe and know her mental and physical condition; and that she was too weak mentally and physically to perform any labor for William J. Stone of any value; but the commissioner rejected the testimony as incompetent, and the court sustained his action. Obviously, this calls for the opinion of witnesses, not experts, as to the mental and physical ability of plaintiff, and therefore their opinions as to the mental capacity to do valuable labor—the only point in dispute—must be based upon the acts and declarations of plaintiff as observed and known at first hand by the witnesses, and testified to by them. What facts can these non-experts give us other than their impressions or information derived from the conduct, condition, or language, or acts, of the plaintiff's capable of being contradicted by her if she could testify?

The policy of the statute excludes the testimony of an interested witness concerning any transaction or communication with the insane party in which the witness in any manner participated, or was in any way a party thereto. Accordingly, it was held in *Holcomb* v. *Holcomb*, 95 N. Y. 316, under a statute using the same language as our statute, that testimony was improperly received of interested witnesses as to conduct and actions of deceased, tending to show his enfeebled and dependent condition, and as to statements made by him, although not addressed to the witness, and made in ignorance of his presence; and this for the reason that it was a transaction or communication in which the witness to some extent and in some way participated, and which the deceased could have contradicted if sane and alive. The policy of our statute is to take away the incompetency of interest only where it can be contradicted by the one testified against, and carefully avoids putting the interested party on any other or higher ground than that of being made competent when his adversary also can speak, for they are put upon an equal footing in that regard; and where, in the specified cases, that can not be done, the interested party is excluded. *In re Eysman's Will* (N. Y. App.) 20 N. E. 613; *Anderson* v. *Cranmer*, 41 W. Va. 562; *Owens* v. *Owens*, 14 W. Va. 88; *Seabright* v. *Seabright*, 28 W. Va. 412; *Kerr* v. *Lunsford*, 31 W. Va. 659 (8 S. E. 493). See the opinion of Judge Johnson in *Anderson* v. *Cranmer*, 11 W. Va. 562, 575, where the New York doctrine is discussed and approved. Upon principle, and on these authorities, we are of opinion that the testimony of these interested non-expert witnesses was properly rejected.

The second and important question is, was the claim of plaintiff barred by any statute of limitation—the bar of five years, as claimed and set up by defendant—or has the plaintiff been guilty of such *laches*, or is her claim a stale one, so that the Court ought not to entertain her suit? In regard to these *ex parte* settlements the statute says (section 22, chapter 87) that the report, to the extent to which it may be so confirmed, shall be taken to be correct, except so far as the same may in a suit, in proper time, be surcharged or falsi-

fied. No statute declares what is a proper time, and there is no statutory bar; for the statute of limitations of five years, as claimed by the appellant, can not apply. *Bruce* v. *Bickerton*, 18 W. Va. 342. *Laches* is inexcusable delay in asserting a right, and is an equitable defense, determinable by the particular facts. And. Law Dict. 593. But the term implies knowledge of one's rights, and therefore it can not be imputed to one who is *non compos mentis*. See *Halstead* v. *Grinnan*, 152 U. S. 412 (14 Sup. Ct. 641); *Craig* v. *Leiper*, 2 Yerg. 193; *Knight* v. *Watts*, 26 W. Va. 175. The uncontroverted facts, so far as they appear by this record, are that the labor performed by plaintiff for her committee, William J. Stone, and his family, together with the use of her money in his hands, was sufficient—amply sufficient—to pay and did pay for the boarding, clothing, and maintenance of plaintiff, and therefore the various amounts charged by her committee against the corpus of her estate, as shown by the settlements sought to be falsified, were plainly erroneous, and ought not to have been allowed. Although such committee is not comprehended by section 8 of chapter 82 of the Code, which provides that, "except for disbursements of the annual income of his ward's estate and for such amounts as the circuit court shall have first authorized to be expended of the principal of his personal estate, no credit shall be allowed the guardian in the settlement of his accounts," yet the duties of committees are in general the same as those of guardians of minors (see *Anderson* v. *Anderson*, 42 Vt. 350); and therefore this committee should not have expended the corpus of his ward's estate without first having been authorized by the proper circuit court, which was not done in this case, for which failure no excuse is given. As to duties of guardians under the statute, see *Windom* v. *Stuart*, 42 W. Va.— (26 S. E.—)and of committees, see Busw. Insan. § 92, 11 Am. & Eng. Enc. Law, 121.

Decree complained of affirmed.