MELVIN G. SPERRY, *Exec., etc. v.* HARLES L. CLARK

(No. 9099)

Submitted January 8, 1941. Decided February 25, 1941.

*Charles B. Johnson* and *Johnson & Johnson,* for appellant.

*Powell & Clifford* and *Sperry & Snider,* for appellee.

Fox, JUDGE:

This is a suit instituted by Melvin G. Sperry, executor of the last will and testament of Charles L. Patton, deceased, against Harles L. Clark, seeking to set up and establish as valid evidence of indebtedness, alleged to be due from Clark, a note of $5,000.00, dated the 5th day of September, 1936, payable to Patton, with which there was deposited as collateral security fifty shares of the preferred stock of the Empire National Bank of Clarksburg, and seeking a decree against Clark for the amount of said note with interest. From a decree in favor of the plaintiff, the defendant prosecutes this appeal.

The execution of the note in question is not disputed, nor is it disputed that Patton advanced to Clark the sum of $5,000.00, with which to purchase shares of stock in the Empire National Bank. It is contended, however, that the admission by Clark of the execution of this note,

coupled as it is with his claim that it was afterwards cancelled, and a note for the same amount substituted and made payable to the wife of Clark, should be taken together, and that there is, therefore, no admission or proof of the debt. We do not think this position can be maintained. The evidence is clear, independent of the pleadings filed by the defendant, or his testimony on that point, that the money was advanced to him by Patton, and a note executed. The testimony of Cecil B. Highland establishes this fact. Moreover, the asserted incompetency of the defendant to testify as to personal transactions with Patton applies to testimony against his estate, and not to statements against interest. *Crothers' Admr. v. Crothers,* 40 W. Va. 169, 20 S. E. 927.

The suit alleges the execution of the note on the 5th day of September, 1936, to become payable on February 1, 1937. There is no allegation that there was any renewal of the note, although it appears that the defendant paid the interest due at its maturity on February 1, 1937, and on or about the 2nd day of August, 1937, made another payment of interest, and offered to renew the note. Whether or not two notes were executed instead of one is important only in view of the fact that there is a dispute as to the form of the note. It appears from the testimony of Highland that the note executed was in typewritten form, while the testimony of Amos G. Skidmore, who claims to have seen the note in September, 1937, the night before Patton was taken to a hospital during his last illness, indicates that it was a collateral note drawn on a form used by the Empire National Bank.

Amos G. Skidmore, to whom a bequest was made by Patton, and which bequest has been paid, states that on the night before Patton was removed to the hospital, he showed him certain papers which he kept in a strong box in a closet in his home, and that one of the papers shown him was a note of $5,000.00, executed by Harles L. Clark, which we are asked to believe is the note upon which plaintiff seeks recovery in this cause. There was attached to this note a certificate for shares of stock in the Empire National Bank. The testimony of Skidmore

as to what occurred on that occasion is confined to what he saw, and does not amount to evidence of anything Patton may have said. The next morning Patton was taken to a hospital, and at some time later, either on the same day or within a day or two, which is not important, Sallie Zinn, a niece of Patton, accompanied by the defendant, went to Patton's residence, and, having a key to his closet in her possession, removed certain papers from the strong box mentioned above. The defendant waited outside. She admits that she removed therefrom a note of $700.00, payable to Patton, executed by another niece, Beulah Patton Clark, wife of the defendant, which note she says she delivered to Mrs. Clark, and which note Mrs. Clark destroyed. It is significant that the record shows that Sallie Zinn secured these papers at the instance of her sister, Beulah Patton Clark, and without any direct authority therefor on the part of Patton, although she states that she afterwards told Patton what she had done, and that he approved her conduct. Sallie Zinn removed these papers to the home of the defendant, where she resided at the time, and the fact that she did so became known, with the result that she was asked to turn them over to the plaintiff herein. She declined to do so, but did execute a paper listing the papers in her possession, among them being a note of $5,000.00, dated August 2, 1937, executed by Harles L. Clark, and payable to Beulah Patton Clark, his wife. It is contended by the defendant that this note to his wife was intended to take the place of the note he had theretofore executed to Patton. The claim of the plaintiff is, in effect, that this note was fraudulently substituted for the note which the defendant executed, payable to Patton, and which the witness Skidmore says he saw. The shares of stock which were filed with the original note were attached to the substituted note.

The contention of the defendant is that when he communicated with Patton in August, 1937, for the purpose of paying accumulated interest and to effect a renewal of the note, Patton asked that the note be changed, and that the note to his wife, Beulah Patton Clark, was then executed and delivered to Patton. The defendant testifies to

this transaction, and there is some testimony on the part of his wife which tends, in some degree, to corroborate him, and has other bearings upon the case, and which involves personal transactions and conversations with the deceased. There was objection to this evidence under Code, 57-3-1, which objection was overruled, and the testimony of both Clark and his wife was considered by the trial court in rendering its decision. We think this was error. Both Clark and his wife were incompetent to testify as to any personal transaction had by either of them with the decedent Patton. But for the testimony of Skidmore and a clause in Patton's will hereinafter to be mentioned, there would appear to be no reasonable grounds for controversy on this point. *Paxton* v. *Paxton*, 38 W. Va. 616; 18 S. E. 765; *Crothers' Admr.* v. *Crothers*, 40 W. Va. 169, 20 S. E. 927; *Trowbridge* v. *Stone's Admr.*, 42 W. Va. 454, 26 S. E. 363; *Freeman* v. *Freeman*, 71 W. Va. 303, 76 S. E. 657; *Barrett* v. *Andrew, Executrix*, 81 W. Va. 283, 94 S. E. 144; *Curtis* v. *Curtis*, 85 W. Va. 37, 100 S. E. 856, 8 A. L. R. 1091; *Sattes* v. *Sattes*, 113 W. Va. 708, 169 S. E. 392; *Newhouse* v. *England*, 118 W. Va. 649, 191 S. E. 525. Many of these cases raise the bar against the testimony of husband and wife where incompetency of either exists under the statute.

But it is contended that the testimony of Clark and his wife is made admissible because plaintiff introduced as a witness in his behalf, Amos G. Skidmore, to whom a bequest of $1,500.00 had been made by Patton in his will. This bequest has been paid, and a reasonable application of the statute would seem to require a holding that he was not an interested party such as is within the contemplation of that section of the statute which provides that the prohibition against testimony as to personal transactions with a decedent shall not extend to any transaction or communication as to which an executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined on his own behalf.

In *Crothers' Admr.* v. *Crothers, supra*, it was held that "By common law a person is a competent witness in a case if the proceeding cannot be used as evidence for him, though he may be interested in the question in issue,

and may entertain wishes on the subject and may even have occasion to contest the same question in his own case in a future suit." See also *Lilly* v. *Ellison,* 107 W. Va. 402, 148 S. E. 380.

The case of *Metz's Admr.* v. *Snodgrass,* 9 W. Va. 190, cited by the defendant is one in which an heir-at-law testified; in *Painter* v. *Long,* 69 W. Va. 765, 72 S. E. 1092, a widow testified; and in *Ogdin* v. *First Nat. Bank,* 103 W. Va. 665, 138 S. E. 376, the witness whose testimony was challenged was made the witness of the opposite party and the objection of incompetency thereby waived. We do not think they apply to the testimony of Skidmore.

It will be observed that the statute itself requires that the testimony of a legatee or other interested party such as will permit a removal of the bar created by the statute must be given "on his own behalf." We do not think the testimony of Skidmore furnishes any basis for the testimony of the defendant and his wife.

Patton made two wills while he was a patient in the hospital: one on the 24th day of September, 1937, and the other on the 30th day of September, 1937. In the last executed, he made a statement "for the information of my executor" in which he stated that he was the owner of the $5,000.00 note on which this suit is based. Also that he was the owner of a $700.00 note executed by Beulah Patton Clark, which she had destroyed. Objection was made to the introduction of this statement, and the same was sustained, and it therefore cannot be considered as part of the plaintiff's case. However, it is contended by the defendant that the mere offering of this portion of the will operated to make admissible the testimony of Clark and his wife with reference to the note in controversy herein. We are unable to agree with this contention. In the first place, the court correctly excluded the testamentary statement. In *Crothers' Admr.* v. *Crothers, supra,* it is held: "When a transfer of property has been made, a declaration by the transferrer that he is still the owner of the property, made after such transfer, is not admissible against the transferee.", and "Declaration of a deceased person claiming ownership of specific property, is not

competent evidence in favor of his administrators, or others claiming title under him, whether such declarations of ownership were made before or after the title of the adverse claimant commenced." At most the admission of this statement by the decedent Patton would have amounted to evidence on his part bearing upon the matter in issue. If it had been admitted as such, then undoubtedly Clark and his wife could have given their version of the matter, but when the evidence of the decedent was not admitted there would seem to be no reasonable ground upon which testimony of the interested parties could be based.

In *Kimmel* v. *Shroyer*, 28 W. Va. 505, a widow gave a deposition in her own behalf in a suit against the executor of her husband's estate in which she testified as to personal transactions between her deceased husband and the executor. The executor then testified. The Court held "The deposition of the widow was itself incompetent evidence and could not therefore lay the foundation for making the executor a competent witness to testify in his own behalf as to personal transactions or communications had with the deceased, nor could it make his wife a competent witness as to such transactions and communications. The testimony of both the executor and his wife as to such matters was therefore incompetent." We see no distinction in principle between that case and the one at bar.

Eliminating the testimony of the defendant and his wife, we have this situation: Patton advanced Clark $5,000.00 for which he executed his note, and to secure which he deposited the very stock which the money was advanced to purchase. The loan was never repaid, and the stock was always retained by Patton, and was turned over to his executor after his death. An obligation once assumed is not easily destroyed except by payment, and there has never been any payment by Clark to Patton or to his executor. The defendant would avoid this situation by a showing that Patton intended, in effect, to make a gift of this debt to his niece, Beulah Patton Clark, the wife of the defendant. The only competent testimony which bears upon this claim is that of Lentz Clark, a

brother of the defendant, and his testimony in substance and effect is as follows: In August, 1937, he and his brother, the defendant, went to Patton's store in Clarksburg, and the defendant told him he wanted to pay him $150.00 interest on the $5,000.00 note, and that Mr. Patton then said, "I want you to make the note out to your wife the same as we did the note on the service station." The defendant then gave Patton the $150.00, and afterwards, accompanied by his brother, went to a business place in Clarksburg, where his sister worked, and there wrote out a pencil copy of a note payable to his wife and had his sister typewrite the same. They then returned to Patton's Store, where the defendant handed Patton the new note, and Patton then reached under the counter and pulled out "this other note" and the stock and compared it with the new note, and started to hand it to the defendant, who told him he would rather he would give it to his wife himself, and that Patton then said, "It will soon be Christmas and she has a birthday and I will deliver it to her myself." This witness does not testify as to what was done with the old note, and the only competent testimony is that all the papers were retained by Patton. Some weeks later Patton became ill, was taken to a hospital, and died on October 11, 1937. There is no doubt but that Patton retained, at all times, possession of the bank stock, up to the time he went to the hospital.

The only basis upon which the defendant can defeat the claim of the plaintiff is that of a gift from Patton to Beulah Patton Clark, and the only competent testimony, that of Lentz Clark, fails to establish such a gift. That Patton may at some time have intended to deliver this note and the stock to his niece, and thereby consummate a gift, is insufficient to overcome the fact that he did not do so at any time, because it was found among the papers on his death. We do not even have to go so far as to say that the original note of the defendant was "purloined" and the new note substituted. The transaction which would have transferred this property from Patton to his niece was never consummated, and the original obligation

never having been satisfied remained the property of Patton and passed to his executor.

After the death of Patton, the defendant made some statements which are chargeable against him. He discussed some of the matters affecting Patton's estate with officials of the Empire National Bank, and it is contended that at one time he mentioned this $5,000.00 note, and the next day called by telephone and corrected a statement to the extent of saying that it had been discovered that the note was payable to his wife. He had a claim against the estate for commissions growing out of the purchase of bank stock and shortly after Patton's death stated that he had this claim and that it could go as a credit on his note. He explains this conversation by saying that he had reference to some land notes which his wife had executed to Patton, and which were secured by deed of trust on their home in Clarksburg. He says that he meant that a credit for his claim could go on those notes. This explanation is weakened by the fact that there is in the record a paper in the handwriting of the defendant, relating to these notes, and alleged to be signed by Charles L. Patton, stating, in effect, that upon the death of Patton before the payment of the notes, they should be treated as paid. Before the death of Patton, the defendant showed this paper and other papers to Lloyd D. Griffin and inquired of him whether he thought the papers were enforceable, so that at the time he says he made reference to the land notes he knew of this paper.

We see no error of result in the decree of the trial court. That result was reached through consideration of what we believe was incompetent testimony, and was, in our opinion, amply justified even had such testimony been proper. Our decision to reject certain of the testimony of Clark and his wife does not, therefore, require a reversal of the result reached by the trial court, and its decree is affirmed.

*Affirmed.*