No. 9930.

## YEAGLEY v. WEBB.

AFFIDAVIT.—*Attorney and Client.—Notary Public.— Verified Answer.—Motion.* *to Strike Out.*—There is no law in force in this State which forbids an attorney, who is also a notary public, to administer an oath to his client; and, therefore, there is no error in overruling a motion to strike out a verified answer, upon the ground that the affidavit was sworn to by the defendant before his attorney as a notary public.

PROMISSORY NOTE.—*Payable in Bank in this State. —Negligence.—Bona Fide* *Endorsee before Maturity.*—The maker of a promissory note, payable to order or bearer in a bank in this State and negotiable as an inland bill of exchange, is liable to a *bona fide* endorsee thereof for value before maturity, if such maker was guilty of negligence in failing to use reasonable care to inform himself of the contents of such note.

From the Montgomery Circuit Court.

*L. J. Coppage,* for appellant.

*M. W. Bruner,* for appellee.

HOWK, J.—This was a suit by the appellant, as the endorsee, against the appellee, as the maker, of a promissory note payable at a bank in this State. Issues were joined and tried by a jury, and a general verdict was returned for the appellee, the defendant below. With their general verdict the jury also returned their special findings on particular questions of fact submitted to them by the appellant, under the direction of the court. Over the appellant's motions for judgment in his favor on the special findings of the jury, and for a new trial, the court rendered judgment on the general verdict for the appellee.

The first error assigned by the appellant is the decision of the court in overruling his motion to strike out the first paragraph of appellee's answer. This motion was in writing, and the causes assigned therein, for striking out the paragraph, were as follows:

"1. Because the paragraph is a denial of the execution of the note, and is not sworn to.

"2. Because the paragraph appears to have been sworn to

by the defendant before her attorney of record, and not otherwise."

The court committed no error, we think, in overruling this motion. We know of no law in force in this State which forbids an attorney, who is also a notary public, from administering an oath to his client. The propriety of such an act may possibly be questioned, but the act is not illegal. The oath thus administered is a legal oath, and, if untrue, the affiant might, doubtless, be convicted of perjury therefor.

The next error complained of in argument, by appellant's counsel, is the overruling of his motion to strike out the fourth paragraph of appellee's answer, for the same reasons assigned in the motion to strike out the first paragraph of answer. There was no error in this ruling of the court.

Appellant's counsel next discusses the alleged error of the court in overruling a demurrer to the fourth paragraph of answer. In this paragraph the appellee alleged in substance that, at the date of the note in suit, two men came to her house near New Ross, Indiana, and contracted with her to put a lightning-rod on her dwelling-house; that the men represented to her that they were the agents of Thomas J. West & Co., of Chicago, Illinois, the payees of said note; that they agreed to put up said rod for the sum of $9, payable in three annual instalments, and she agreed with them to execute her note for said sum of $9, payable as aforesaid; that, after such rod had been put up by such men, one of the men drew up a note for her to sign, representing that it was for $9, in accordance with said agreement; that one of the men pretended to read over to her such note before she signed it; that he read it as a note for $9, and not for $65.25; that she understood that it was a note for $9, and no more; and she averred that she was unable to read writing, and she relied wholly on the representations of said men to state the contents of the note correctly; that there was no one at her house that could read writing except said men, and her nearest neighbors were one-fourth of a mile distant, and she did

not have time to go and get them to read the note to her; that she believed the note in suit was the one she subscribed her name to, thinking that it was for $9; that she never intended to execute such a note as she now found her name subscribed to; and she averred that all the representations of such men, as to the amount and contents of the note, were false and fraudulent and made for the purpose of defrauding and deceiving her. Wherefore she said that the note in suit was not her note, and she ought not to be compelled to pay the same, etc.

This paragraph of answer was verified. The note in suit purported on its face to have been executed by the appellee, by making her mark.

We are of the opinion that the court erred in overruling the demurrer to this fourth paragraph of answer. It is claimed by appellee's counsel, that the paragraph is substantially the same as that set out in the opinion of the court in *Webb* v. *Corbin*, 78 Ind. 403, and which was there held to be sufficient. We think, however, that the paragraph under consideration differs from the one set out in the case cited, in several important particulars. In the paragraph referred to, it appeared that the defendant was an old man, sick and weak in body and mind, afflicted with palsy, and living by himself without any family, at his home in the country, two miles from any town, and that he was wholly deceived in relation to the kind of instrument he was fraudulently induced to execute. No similar facts to these are alleged in the paragraph of answer, the substance of which we have given. The appellee did not allege that she was old, or sick, or afflicted, or that she lived alone, without any family. In the absence of averment to the contrary, it might, perhaps, be assumed that she was in the prime of life, of vigorous health, and living with her house full of children. However this may have been, she did allege that her dwelling-house was near New Ross; and she knew that she executed a note for a lightning rod, after it had been put in position on her house. It may be assumed, we

think, that the two men referred to in appellee's answer were utter strangers to her, from the fact apparent in the fourth paragraph that she did not give a name to either of the men. Yet she relied upon these two strangers to correctly read the note to her, which they asked her to execute, because she did not have time to go or send one-fourth of a mile to her nearest neighbor, and have the note read to her by some one in whom she might have reasonably placed confidence.

We are of the opinion that the facts alleged in the fourth paragraph of appellee's answer, and the inferences which may fairly be drawn therefrom, make the doctrine of *Nebeker* v. *Cutsinger*, 48 Ind. 436, and of the numerous decisions of this court in line therewith, strictly applicable to the case at bar. The doctrine there enunciated is, that the maker of a promissory note, payable to order or bearer in a bank in this State, and negotiable as an inland bill of exchange, is liable to a *bona fide* endorsee for value before maturity, if such maker was guilty of negligence in failing to use reasonable care to inform himself of the contents of such note. *Cornell* v. *Nebeker*, 58 Ind. 425; *Maxwell* v. *Morehart*, 66 Ind. 301; *Ruddell* v. *Fhalor*, 72 Ind. 533 (37 Am. R. 177); *Ruddell* v. *Dillman*, 73 Ind. 518; *Williams* v. *Stoll*, 79 Ind. 80. In *Ruddell* v. *Fhalor*, *supra*, it was said: "We think the true doctrine is, that the makers of such a note as the one in suit, who, by their carelessness or undue confidence, have enabled another to obtain the money of an innocent person, should answer the loss they have occasioned." We conclude this part of the case in hand, as we began, with the opinion that the demurrer to the fourth paragraph of appellee's answer ought to have been sustained.

This conclusion renders it unnecessary for us to consider at length either of the other alleged errors. The special findings of the jury, when construed together, as they must be, were not so inconsistent with their general verdict as to entitle the appellant to judgment; although it would be difficult, we think, to reconcile some of the facts specially found with

the general verdict.   In view of another trial of the cause, it would hardly be proper for us to comment on the evidence.

The judgment is reversed, at appellee's costs, and the cause is remanded, with instructions to sustain the demurrer to the fourth paragraph of answer, and for further proceedings not inconsistent with this opinion.