DEYO *v.* DETROIT CREAMERY CO.

1. MOTOR VEHICLES—NEGLIGENCE—EVIDENCE—CONCLUSIONS.

In action for injuries caused by trailer attached to defendant's truck skidding on icy street, in excluding question as to what would be effect of driver's pulling his car to left on icy street where it is crowned toward center—as to what would happen to rear of car or trailer that was attached to it—court's remarks that counsel and jury and everyone can draw their own conclusions, *held*, not reversible error, under circumstances.

2. NOTARIES—ATTORNEY AND CLIENT—AFFIDAVITS.

3 Comp. Laws 1929, § 13603, expressly forbidding administering of oaths by attorneys and counsellors in cases in which they may be professionally engaged, applies to affidavits as well as acknowledgments.

3. APPEAL AND ERROR—EVIDENCE—IMPEACHMENT—CROSS-EXAMINATION—OPENING DOOR FOR EVIDENCE OTHERWISE INADMISSIBLE.

Where defendant's attorney, on direct examination, brought out facts in regard to sworn statement given by witness to plaintiff's attorneys contradictory of his present testimony, it was not error to permit cross-examination of witness as to contents of said statement, which was introduced in evidence for impeachment purposes, although it was notarized by interested attorney, which, under 3 Comp. Laws 1929, § 13603, is not permissible.

4. MOTOR VEHICLES—EVIDENCE—REBUTTAL.

Where, in action for injuries inflicted on 12-year old boy by trailer attached to defendant's truck, defendant claimed that boy fell while attempting to climb onto trailer, there was no error in admitting plaintiff's testimony showing that his wrists had been recently broken, were in weakened condition, and that in consequence it would have been impossible for him to grasp hold of trailer.

5. TRIAL—REOPENING CASE DISCRETIONARY WITH COURT.

It is discretionary with trial court to allow or refuse permission to reopen case.

On speed of automobile as negligence, see annotation in 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 488; 51 L. R. A. (N. S.) 993.

As to right of jurors to act on their own knowledge of facts in or relevant to the issue, see annotation in 31 L. R. A. 489; 37 L. R. A. (N. S.) 790.

6. MOTOR VEHICLES—NEGLIGENCE—SPEED LIMIT.

Truck driver may be negligent in driving at rate of speed not in excess of limit fixed by statute (1 Comp. Laws 1929, § 4697).

7. SAME—QUESTION FOR JURY.

Whether truck driver was driving in safe manner on crowned street covered with ice, and also whether he made sudden turn so as to cause trailer to skid and injure plaintiff, *held,* questions for jury, under circumstances.

8. EVIDENCE—MATTER OF COMMON KNOWLEDGE.

It is matter of general or common knowledge that unless one moves cautiously on icy pavement, he is apt to skid, slide, or fall.

9. TRIAL—JURORS SHOULD VIEW EVIDENCE IN LIGHT OF THEIR GENERAL KNOWLEDGE.

While jurors may not make use of their own private or secret information concerning matter at issue, they must, in order to act intelligently in determination of case, view evidence presented in light of their general knowledge of field embraced within scope of inquiry.

Appeal from Macomb; Spier (James E.), J. Submitted October 20, 1931. (Docket No. 146, Calendar No. 35,985.) Decided March 2, 1932.

Case by Gerald Deyo, by next friend, against Detroit Creamery Company, a Michigan corporation, for personal injuries caused by defendant's truck, alleged to be due to defendant's negligence. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Vandeveer & Vandeveer,* for plaintiff.

*A. J. Spaulding* and *Stevens T. Mason,* for defendant.

BUTZEL, J. At about 6 p. m. on December 22, 1930, a long truck of defendant Detroit Creamery Com-

pany was proceeding in a northerly direction along Third avenue, and had just passed the intersection at Brainard street in Detroit. The truck consisted of a heavy tractor with two trailers attached. The first trailer was so firmly joined to the tractor that they together appeared to be one large truck to which the second trailer was attached. Each trailer was carrying 23,460 pounds. At the point to which the truck had proceeded, Third avenue is 46 feet in width, with tracks for a single street car line in the center. The street is "crowned," the surface in the center being two inches higher than that along the curb. The trailers resembled covered freight cars, with boxes 17 feet long and eight and one-third feet wide, with a floor four and one-half feet from the ground, and the roof six feet from the floor. Each trailer had an iron stirrup about 12 inches square that dropped from the floor, and also had a single door attached by hinges and fastened by a bolt about two and one-half feet above the floor of the car or about seven feet above the pavement. Above the bolt there was a handle sufficiently large for two hands to grasp.

Gerald Deyo, who by his next friend, Arthur Deyo, is plaintiff, was almost twelve and one-half years of age at the time he sustained the injuries claimed to have been due to defendant's negligence. His home was on the south side of Brainard street in the block east of Third avenue. At about the same time that defendant's truck was coming up Third avenue, plaintiff was proceeding along Brainard street in order to make a small purchase for his parents at a grocery store on the west side of Third avenue. When he reached the latter street, he proceeded northerly on the east side to a point about 30 or 40

feet north of the Brainard street intersection, and then started to cross. He had just advanced a few feet from the curb when he stopped in order to permit defendant's truck to pass him. There is conflicting testimony as to just what then occurred. The boy stated that he stood about two feet from the easterly curb waiting for defendant's approaching truck to pass; that there was an automobile parked along the east side of the curb about 20 feet north from where he stood and in a direct line with defendant's truck; that after the first trailer had passed the boy, defendant's driver, in order not to run into the parked automobile, swung the truck out into the center of the street, the pavement of which was covered with ice; that in so doing, he made such a sudden and sharp turn that the second trailer skidded; that the boy held out his arms so as to avoid being hit, and in so doing was knocked down, and the rear left wheel of the second trailer passed over his left leg, completely crushing it, and necessitating amputation. The boy's testimony was corroborated by an eyewitness, who stated that the truck was proceeding at the rate of 15 to 18 miles per hour, and when its course was suddenly deflected, the rear trailer skidded on the ice, knocked the boy down, and caused the injuries.

Plaintiff claims that defendant's negligence consisted in driving at too rapid a rate of speed on a crowned pavement covered with ice, and in sharply turning the truck to the left so as to cause the trailer to skid and thus cause the injuries. Two special questions were submitted to the jury: (1) Whether the truck was proceeding at a rate of speed in excess of 15 miles per hour; and, (2) whether the boy tried to climb on the stirrup of the trailer. Both were answered in the negative. The jury rendered a verdict

in favor of plaintiff.  A number of questions are involved on the appeal.

Plaintiff's witness was asked:

"What would be the effect of a driver pulling his car to the left on an icy street where it is crowned toward the center, as to what would happen to the rear of the car or trailer that was attached to it?"

It was shown that the witness had never driven a trailer truck, and in excluding the question, the court stated:

"I will sustain the objection.  It is a matter I think that counsel and the jury and everyone can draw their conclusions.  It is more or less a physical fact, but I don't think we are entitled to ask his opinion."

The remarks were left unchallenged.  The court did not state what the conclusions would be.  There was no reversible error under the circumstances.

One J. W. Barker testified on behalf of defendant. He claimed that he was an eyewitness of the accident, and that it was caused by the boy's falling in his attempt to climb up on the trailer.  Barker was asked on direct examination whether he had ever made a different statement.  Notwithstanding objections by plaintiff, he was permitted to testify how he had been interviewed by an investigator representing plaintiff's attorneys.  He accompanied the investigator to a blind pig and was prevailed upon to visit the office of plaintiff's attorneys and to sign and swear to a written statement which belies the testimony given by him.  The affidavit was sworn to before one of the attorneys of record in the case acting as a notary.  On cross-examination, the witness was interrogated as to the contents of the statement, which was introduced.  Section 13603, 3 Comp.

Laws 1929, expressly forbids the administering of oaths by attorneys and counsellors in cases in which they may be professionally engaged. This section applies to affidavits as well as acknowledgments. *Smalley* v. *Bodinus,* 120 Mich. 363 (77 Am. St. Rep. 602). The court, in admitting the statement for impeachment purposes, stated that it made no difference whether it was sworn to or not, as the notarization was immaterial. Without in any way approving of the notarization of a statement before an interested attorney acting as notary, we find there is no impropriety in reading a statement to the jury provided the notarization or acknowledgment is omitted. Inasmuch as defendant on the direct examination of its witness brought out the facts in regard to the entire document, there was no error in admitting it with the notarization.

Error is also claimed because plaintiff testified as to treatment for previous injuries. Defendant partly relied on its claim that plaintiff fell while attempting to climb up on the trailer. In order to do so, it would have been necessary for the boy to take hold of the handle of the door, which was beyond his reach, or grasp tightly some other part of the trailer. It was shown that the boy's wrists had been but recently broken, and his arms had been in casts and were left in a weakened condition, and that, therefore, it would have been impossible for him, on account of his physical condition, to grasp hold of any part of the trailer so as to assist him in climbing up on the stirrup. We do not believe there was any error in the admission of the testimony for the purpose for which it was introduced. See *McKenzie* v. *Vandecar,* 105 Mich. 232; *Whittemore* v. *Walter,* 193 Mich. 365, 373.

Error is further claimed because plaintiff was permitted to recall two of his witnesses to give additional testimony after he had rested and prior to the introduction of testimony on behalf of defendant. The court stated that it would give defendant an opportunity to call its witnesses if it became necessary. It is discretionary with the court to allow or refuse permission to reopen the case. *Corcoran* v. *City of Detroit,* 95 Mich. 84; *People* v. *Traves,* 188 Mich. 345; *Cornell* v. *Fidler,* 194 Mich. 509.

Defendant further claims freedom from negligence because the jury found that it did not exceed the speed limit of 15 miles per hour in the business district. Section 4697, 1 Comp. Laws 1929, permits this rate of speed, subject, however, to the provisions that in any case when such speed will be unsafe, it shall be unlawful, and that one must drive at a careful and prudent speed not greater nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway, and to any other conditions then existing. A driver may be negligent in driving at a rate of speed not in excess of the limit fixed by statute. *Winchowski* v. *Dodge,* 183 Mich. 303; *Bade* v. *Nies,* 239 Mich. 37.

Defendant further claims that the mere skidding of the trailer does not constitute negligence. It became a question for the jury to determine whether defendant's driver drove in a safe manner on a crowned road covered with ice, and also whether he made a sudden turn of the truck so as to cause the trailer to skid and injure plaintiff. It did not require expert testimony to show what is in everyone's knowledge: that one is apt to slide or skid on a slippery pavement and particularly so when making a sharp turn with a vehicle. The testimony does not

show that the skidding was unpreventable. It is within the general or common knowledge of jurors, as well as almost every one else, that unless one moves very cautiously on an icy pavement, he is apt to skid, slide, or fall. While the jurors may not make use of their own private or secret information concerning the matter at issue, they must, in order to act intelligently in the determination of a case, view the evidence presented in the light of their general knowledge of the field embraced within the scope of the inquiry. *Head* v. *Hargrave*, 105 U. S. 45. In *Corey* v. *Hartel*, 216 Mich. 675, 681, this court, in the opinion written by Mr. Justice SHARPE, said:

"The jury were also instructed that if 'the unpreventable skidding of the truck or the sleigh or both' caused the accident, the plaintiff could not recover. This instruction, given without qualification, negatived the force and effect of the statute. * * * The driver could plainly see the condition of the street. He had driven over it several times that day. If he knew, or should have known, that the wheels of the truck were likely to skid, he should have guarded against a collision by stopping or having the truck in that part of the street required by the statute."

The facts in the case presented a question for the jury, and the verdict is supported by proper testimony. We have also examined the other claims of error, but do not believe that they require discussion.

The judgment for plaintiff is affirmed, with costs.

CLARK, C. J., and MCDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.