THE CALHOUN COUNTY BANK, *A Corporation*

*v.*

WILLIAM M. ELLISON, *Administrator, Etc., et al.*

(No. 10048)

Submitted June 7, 1949. Decided June 14, 1949.

LOVINS, JUDGE, dissenting.

*E. L. Eakle,* for appellant.

*A. G. Mathews, Lorentz C. Hamilton,* and *I. M. Underwood,* for appellees.

HAYMOND, PRESIDENT:

This suit was instituted in the Circuit Court of Calhoun County in August, 1945, by The Calhoun County Bank, as plaintiff, to set aside as fraudulent as to creditors a deed dated July 3, 1945, made by William M. Ellison to his son, J. M. Ellison, for four tracts of land in that county which constituted all the real estate of the grantor. William M. Ellison, administrator of the estate of W. A. Ellison, deceased, William M. Ellison, J. M. Ellison, and Edna Lockard, the appellant, were made defendants to the suit. From a final decree entered April 23, 1947, which granted some of the relief prayed for by Edna Lockard in her answer and cross bill and in her amended and supplemental cross bill, but which denied certain claims asserted by her against William M. Ellison and refused to set aside the deed of July 3, 1945, and two subsequent deeds of trust made by J. M. Ellison in favor of the bank, in so far as

they affect her claims, this appeal was granted by this Court upon her petition.

The bill of complaint, filed at September Rules, 1945, alleged that the execution of the deed in question was the result of a scheme and device entered into between William M. Ellison and J. M. Ellison to hinder, delay and defraud the creditors of William M. Ellison and especially the bank, a contingent creditor of William M. Ellison by reason of the prior mistaken or unauthorized payment by it to him of $5,206.44, in satisfaction of certain certificates of deposit claimed by the defendant, Edna Lockard; that she had demanded payment of the certificates which the bank had refused; that there was a contingent liability upon the bank to see that the proceeds of the certificates were repaid to Edna Lockard and to that extent the bank was a creditor of William M. Ellison; that it had demanded from William M. Ellison repayment of the amount paid to him but that he had refused to make such repayment; that the deed was wholly voluntary and that no consideration whatever was paid by J. M. Ellison for the property conveyed; that the deed divested William M. Ellison of practically all the tangible property owned by him or that could be reached by legal process; that William M. Ellison was insolvent; that J. M. Ellison, a son of William M. Ellison, had no money or property of sufficient value to pay for the land conveyed by the deed; that William M. Ellison had continued to reside upon the land and to occupy it in the same manner as he did before the conveyance; that the deed required the grantee to maintain and support the grantor so long as he lives and reserved to him the use and the occupancy of the residence upon the land; and that William M. Ellison, administrator of the estate of W. A. Ellison, had made no settlement of his accounts as such administrator.

The bill of complaint further alleged that Edna Lockard obtained a judgment against William M. Ellison for costs which had not been paid and that he also had possession

of certain cattle formerly owned by W. A. Ellison, who had transferred them to her, and that William M. Ellison probably was indebted to her for the value of the cattle. It also averred that the bank, as a creditor of William M. Ellison, had the right to maintain this suit for the purpose of setting aside the deed of July 3, 1945, in so far as its rights and the rights of other creditors of William M. Ellison were concerned and to invoke the aid of a court of equity to subject the land so conveyed to sale for the repayment to it of the amount paid by it to him for the certificates of deposit.

The prayer of the bill of complaint was that the deed be canceled, annulled and set aside, in so far as it affects the rights of the bank and the other creditors of William M. Ellison; that the land be sold under a decree of the court; that the proceeds of sale be used to repay to the bank the amount paid by it to him for the certificates of deposit, with interest; and that the plaintiff be granted general relief.

On October 1, 1945, the defendant, Edna Lockard, filed her answer and cross bill in which she asked affirmative relief against the bank and William M. Ellison and J. M. Ellison as defendants to the cross bill. In the answer she admitted the allegations in the bill of complaint as to the fraudulent character of the deed of July 3, 1945, between the Ellisons; denied that the bank had paid William M. Ellison, administrator, the amount of $5,206.44 for the certificates of deposit; and charged that the bank owed her the money due for the certificates which she claimed to own. She alleged that the liability of the bank to pay her for the certificates of deposit was not contingent but absolute; denied that the bank believed it had the right to pay William M. Ellison, administrator, for them; and charged that it then knew that they were assets of the estate of W. A. Ellison to which she was entitled. She averred that the bank knew of her claims against William M. Ellison, administrator, and had refused to pay her the amount of the certificates of deposit and deliver to her other property of the W. A. Ellison estate held by it;

that she had a judgment against William M. Ellison, J. M. Ellison and others for costs amounting to $381.82 which was due and unpaid and owed to her by William M. Ellison; that he also owed her for the value of cattle which he forcibly had taken into his possession; and that William M. Ellison, administrator of the estate of W. A. Ellison, the assets of which she claims as owner, had made no settlement of the estate or of his accounts as such administrator.

By her cross bill, seeking affirmative relief against the bank and William M. Ellison and J. M. Ellison, she charged that it owed her the amount of the certificates of deposit and of United States Government bonds and other evidences of indebtedness, assets of the estate of W. A. Ellison owned by her and which the bank had in its possession and refused to pay or deliver to her; that William M. Ellison was indebted to her in the sum of $5,793.33 for personal property, assets of the estate of W. A. Ellison, owned by her, which he had taken into his possession and converted to his own use, and in the sum of $10,000.00 represented by United States Government bonds which he had also taken into his possession and converted to his own use, and for all of which he had failed to account; that her claims against William M. Ellison amounted to $16,175.15; that the bank knew of her claim to the certificates of deposit before it made the alleged payment of $5,206.44 to William M. Ellison, administrator, for the certificates; that the deed of July 3, 1945, made by William M. Ellison to J. M. Ellison, his son, and the alleged transfer of $5,206.44 by the bank to William M. Ellison, were part of a scheme and device upon their part to aid William M. Ellison in disposing of his real estate and placing it beyond the reach of the defendant and other creditors of William M. Ellison, and to enable the bank then to institute this suit for the ostensible purpose to establish its claim of $5,206.44 against William M. Ellison as a first lien upon real estate conveyed by the deed, though it still holds and controls that sum of money, and by that means, to defeat the defendant in the collection of her claims against Wil-

liam M. Ellison, who is also largely indebted to numerous other persons; that William M. Ellison, at the time he made the deed, was hopelessly insolvent; that he owns no other real estate; that he has converted, or is converting, into money all his personal property and the property of the estate of W. A. Ellison in his possession, owned by the defendant, and is fraudulently concealing such property to prevent the defendant and his other creditors from applying it to the payment of their claims against him; that the deed of July 3, 1945, was voluntary, fraudulent and void and was made for the express purpose of hindering, delaying and defrauding the defendant in the collection of her debts against William M. Ellison; and that J. M. Ellison and the bank had full knowledge of and participated in such fraudulent purpose at the time that conveyance was made.

The prayer of the cross bill is that the defendant, Edna Lockard, have a decree against the bank for $5,206.44, with interest, and a further decree requiring the bank to answer under oath and disclose the money in its possession belonging to her as owner of assets of the estate of W. A. Ellison; that she have a similar decree against William M. Ellison; that the deed from William M. Ellison to J. M. Ellison be set aside as voluntary, fraudulent and void in so far as it affects her right to subject the land to the payment of her claims against him; that such debts be decreed to be a first lien on the land; that it be sold and the proceeds of sale applied to the payment of her claims against him; that the rights of his other creditors be adjudicated; and that she be granted general relief.

On November 5, 1945, the defendant, Edna Lockard, filed an amended and supplemental cross bill against J. M. Ellison, the bank, and Albert G. Mathews and Lorentz C. Hamilton, Trustees, in which she alleged that, after she had filed her answer and cross bill, she had learned that J. M. Ellison had made two deeds of trust, respectively dated September 19, 1945, and October 1, 1945, and recorded September 19, 1945, and October 3, 1945, upon the land embraced in the deed of July 3, 1945, from Wil-

liam M. Ellison and upon a tract of eighty two acres of land owned by J. M. Ellison, to Albert G. Mathews and Lorentz C. Hamilton, Trustees, for the benefit of the bank; that one of the deeds of trust was to secure a purported loan by the bank to J. M. Ellison for $6,023.12 and the other was to secure another purported loan to him for $1,025.00; that the loans were not bona fide and constituted a scheme and device entered into between J. M. Ellison and the bank in the further attempt to hinder, delay and defraud the defendant in the collection of her claim of $16,175.15 against William M. Ellison; and that she was entitled to have the deeds of trust set aside in so far as they affect her right to subject the land of William M. Ellison to the payment of her claim against him.

To the answer and cross bill and the amended and supplemental cross bill, the bank filed its special reply on March 13, 1946. In it the bank alleged that on October 19, 1945, it issued a cashier's check to Edna Lockard for $5,206.44, which was accepted by her and paid on January 11, 1946, in full payment of her claim for the certificates of deposit and denied that it owed her any further amount on that account. The bank denied that it had in its possession any funds or property of the estate of W. A. Ellison claimed by the defendant and, on information and belief, denied that William M. Ellison had forcibly taken or had in his possession any property of the estate of W. A. Ellison and also denied that the defendant had any claim against him for any such property. It also disclaimed knowledge of the amount of the costs owed by him to the defendant and called for proof as to that item. It denied that it had not paid $5,206.44 to William M. Ellison, administrator, and alleged that it had paid that sum to him. It denied that the deed made by William M. Ellison to J. M. Ellison and the transfer of $5,206.44 to William M. Ellison were a scheme and device as charged in the answer and cross bill of the defendant. It alleged that it had no knowledge of the deed from William M. Ellison to J. M. Ellison until long after it was made and recorded, admitted that it instituted this suit, as a contingent creditor

of William M. Ellison for the purpose of setting aside the deed in so far as it tended to hinder, delay and defraud his creditors, and especially the bank, and stated that after it instituted this suit it was satisfied that J. M. Ellison had paid a valuable consideration to William M. Ellison for the land, paying $450.00 in cash and executing twelve notes for $200.00 each, or a total consideration of $2,850.00; that to protect the conveyance J. M. Ellison agreed to pay and did pay the bank the amount which it had paid to William M. Ellison for the certificates of deposit; and that the bank loaned to J. M. Ellison the two sums of money set out in the two deeds of trust made by him to Albert G. Mathews and Lorentz C. Hamilton, Trustees. It alleged that the bank is not advised as to any indebtedness owed by William M. Ellison at the time he made the deed dated July 3, 1945, and that it does not know whether he was then insolvent. It denied that it had any knowledge of the conveyance by William M. Ellison to J. M. Ellison, or of any fraudulent intention on the part of the grantor or the grantee in that deed or that it participated in any fraudulent intention or transaction. It admitted the allegations of its bill of complaint with respect to that transaction. It denied that the two loans to J. M. Ellison constituted a scheme or device between it and J. M. Ellison to hinder, delay and defraud the defendant in the collection of her claims against William M. Ellison. It alleged, upon information and belief, that William M. Ellison was "an incompetent person" and that a committee had been appointed for him by the County Court of Wood County. It denied that the deeds of trust were void and that the deed from William M. Ellison to J. M. Ellison vested no title in J. M. Ellison, but it did not expressly deny that the deed of July 3, 1945, was fraudulent.

On April 3, 1946, the defendant, Edna Lockard, filed her replication to the special reply of the bank. In it she alleged that the cashier's check of the bank for $5,206.44 had been accepted by her not in full, but in part, payment of her claim on account of the certificates of deposit;

that unpaid interest on that claim amounted to $756.78; that her claim for costs against William M. Ellison was $381.82, and that her claim against him for property of the estate of W. A. Ellison, for which he had failed to account, was $18,320.26, which included interest from August 6, 1943. She also reiterated her charges of fraudulent conduct upon the part of the Ellisons, the bank and the trustees in the two deeds of trust.

The bank filed an answer to the replication and repeated its denials of the charges of fraud.

On April 15, 1946, Rebecca Ellison, as committee for William M. Ellison, by counsel, informed the court that William M. Ellison on November 15, 1945, had been adjudged to be incompetent because of his mental condition, and in the order entered on that day it is recited that the appointment of Rebecca Ellison as committee was shown by the certificate of her appointment then filed. The order also stated that the "incompetency" of William M. Ellison was suggested on the record. On April 17, by order entered on that day, on motion of Edna Lockard, by her attorney, the suit was revived as to William M. Ellison in the name of Rebecca Ellison, as committee for him.

On July 3, 1946, Rebecca Ellison, as committee for William M. Ellison, filed an answer in the case. In the answer she alleged that she had been appointed, by the County Court of Wood County in a hearing by that court in which William M. Ellison was found to be a mental defective, committee for him and that she had qualified and was acting as such committee. The answer denied, on information and belief, that The Calhoun County Bank had paid William M. Ellison, administrator of W. A. Ellison, any money for the certificates of deposit, but admitted that William M. Ellison had conveyed the four tracts of land owned by him to his son, J. M. Ellison, by the deed of July 3, 1945. The answer also alleged that William M. Ellison, at the time of the execution of the deed, was of unsound mind, that the deed was procured by the exercise of undue influence and fraudulent means upon the part of J. M.

Ellison, and that the consideration was grossly inadequate and wholly unpaid by J. M. Ellison; that J. M. Ellison never paid the bank $6,200.00 or any other sum for William M. Ellison; that William M. Ellison is not indebted to J. M. Ellison in any sum; that the two deeds of trust made by J. M. Ellison to trustees for the bank are not bona fide, and that the deed of July 3, 1945, and the deeds of trust, should be set aside as a cloud upon the title of William M. Ellison to the land. The answer also denied that William M. Ellison owed Edna Lockard any sum on account of any tangible property or United States Government bonds. The answer was verified by the committee before a notary public who was also one of her counsel in the case.

To the answer of the committee the defendant Edna Lockard filed, on August 7, 1946, a special reply in which she did not deny, but called for proof to support, the allegations relating to the adjudication of William M. Ellison as a mental defective and the appointment of a committee for him, denied that William M. Ellison was of unsound mind and not competent to make the deed of July 3, 1945, and, that it was procured by undue influence and fraudulent means by J. M. Ellison. She alleged that she became the owner on July 31, 1943, of the tangible personal property and United States Government bonds of the estate of W. A. Ellison which were possessed by William M. Ellison and converted to his use, and charged that the statements as to those matters in the answer of the committee were untrue and that the committee was a participant in a fraudulent scheme to prevent her from recovering the amount owed her by William M. Ellison. She also denied that William M. Ellison was or is insane.

No demurrer was filed by any party to any pleading in the case except a demurrer by the bank to the replication of Edna Lockard to its special reply in writing, which demurrer was overruled by order entered August 21, 1946. The only objection or protest by Edna Lockard to any pleading was her objection to the answer of the bank to

her replication, which objection was overruled. J. M. Ellison has not appeared or filed any pleading in the case. No party introduced any evidence in support of the allegations of the pleadings upon any of the issues presented except the defendant, Edna Lockard, and the proof submitted by her, in the form of depositions, consisted of testimony by her and six witnesses in her behalf to establish her claims against William M. Ellison for the items of tangible personal property and United States Government bonds belonging to her as assets of the estate of W. A. Ellison, which she asserts were possessed by William M. Ellison and converted by him to his own use.

By final decree entered April 23, 1947, the circuit court held that the bank was indebted to Edna Lockard, on account of interest due upon the certificates, in the sum of $685.91, and that she recover that amount from it; that she recover $381.82 from J. M. Ellison and Rebecca Ellison, committee for William M. Ellison, as costs in other litigation; that her other claims against William M. Ellison aggregating $18,306.26 be denied; that Rebecca Ellison, committee for William M. Ellison, was not entitled to have the deed of July 3, 1945, made by William M. Ellison to J. M. Ellison, or the two deeds of trust made by J. M. Ellison to trustees for the bank, canceled or set aside; that the deed was valid and conveyed title to the land to J. M. Ellison and that the deeds of trust were valid and constituted liens upon the land described in them in favor of the bank. The decree adjudicated the claim of Edna Lockard for $381.82 a first lien, the lien retained in the deed of July 3, 1945, to secure the maintenance of William M. Ellison and his right to occupy the residence during his life, a second lien, the first deed of trust a third lien, and the second deed of trust a fourth lien, upon the real estate of J. M. Ellison; that upon default by J. M. Ellison and Rebecca Ellison, committee for William M. Ellison, in the payment of the claim of Edna Lockard of $381.82 for thirty days, the real estate be sold; and that the bank pay to Edna Lockard her costs except an item of $41.92, expenses of the depositions filed by her.

The foregoing statement, in somewhat lengthy detail, of the facts alleged, admitted and denied, in the successive and voluminous pleadings, has been made in order to present the material facts which, in this case, have been established principally by the admissions in the pleadings of the respective parties rather than by proof.

The grounds in support of the various assignments of error relied on by the defendant and appellant, Edna Lockard, for reversal of the decree of April 23, 1947, may be summarized under these heads: (1) The answer of the committee, not being properly verified, should have been rejected by the trial court and not permitted to be filed; (2) the answer of the bank to the replication of the defendant, Edna Lockard, not having been filed within fifteen days after the demurrer of the bank to the replication was overruled, should have been rejected; (3) the bank has failed to overcome or explain by evidence the presumption of fraud which arises from undisputed facts with respect to the deed of July 3, 1945, and the deeds of trust to the trustees for the bank; (4) the alleged insanity of William M. Ellison was not established; (5) the appointment of the committee for William M. Ellison did not render inadmissible the testimony of Edna Lockard as to personal transactions between her and William M. Ellison; and (6) the trial court erred in denying her claim against William M. Ellison for the assets of the estate of W. A. Ellison owned by her, possessed by William M. Ellison and converted to his own use.

In support of the final decree the main contentions of the bank are that the defendant, Edna Lockard, has failed to prove that the deed of July 3, 1945, and the deeds of trust were made for the purpose of hindering, delaying or defrauding her as a creditor of William M. Ellison; that she is not a creditor of William M. Ellison; and that the final decree grants her all the relief to which she is in any way entitled.

The contentions in the brief filed in behalf of the committee are that William M. Ellison is an insane person;

that the appointment of the committee can not be collaterally attacked; that Edna Lockard's testimony concerning personal transactions with William M. Ellison is incompetent; that she has failed to prove her claims against William M. Ellison; and that the deed of July 3, 1945, and the deeds of trust should be set aside in so far as they relate to the land conveyed by William M. Ellison as a cloud upon his title.

The question whether an attorney, who, as notary public or other officer, is generally authorized to administer oaths and take acknowledgments, is disqualified to take the affidavit or the acknowledgment of his client, has given rise to many conflicting decisions in different jurisdictions. See 1 Am. Jur., Affidavits, Section 10; 2 C. J. S., Affidavits, Section 10f(2) ; 2 C. J. 330, 331. In England and in Canada, long standing rules of court prevent the use of an affidavit made by a litigant before his attorney in the cause. See Annotations, 74 A. L. R. 772, and cases cited. In some states, by statute, an attorney is disqualified to take the affidavit of his client in a pending case. *Moultrie Lumber Company v. Jenkins,* 121 Ga. 721, 49 S. E. 678; *Warner v. Warner;* 11 Kan. 121; *Allen v. West Bay City,* 140 Mich. 111, 103 N. W. 514, 6 Ann. Cas. 35; *Deyo v. Detroit Creamery Company,* 257 Mich. 77, 241 N. W. 244; *Horkey v. Kendall,* 53 Neb. 522, 73 N. W. 953, 68 Am. St. Rep. 623; *Leavitt & Milroy Company v. Rosenberg Bros. & Co.,* 83 Ohio St. 230, 93 N. E. 904. In a number of jurisdictions it has been held that an attorney can not take the affidavit of his client in a case in which he represents him as attorney and that an affidavit so taken will be rejected. *Frybarger v. McMillen,* 15 Colo. 349, 25 P. 713; *Dem ex dem. Hadley v. Geiger,* 9 N. J. L. 225; *Pullen v. Pullen* (N.J. Ch.), 17 A. 310; *Gilmore v. Hempstead,* 4 How. Prac. (N.Y.) 153; *Kuh v. Barnett,* 25 Jones & S., 234, 6 N. Y. S., 6 N. Y. 881. In other jurisdictions, though the practice is disapproved, the courts hold that an attorney who is otherwise authorized to administer an oath is not disqualified to take the affidavit of his client and that such affidavit will be received. *City of Birmingham v. Simmons,* 222 Ala. 111, 130 S. 896, 74 A. L. R. 766; *Reavis v.*

*Cowell,* 56 Cal. 588; *Yeagley v. Webb,* 86 Ind. 424; *McLean v. Weeks,* 61 Me. 277; *McDonald v. Willis,* 143 Mass. 452, 9 N. E. 835; *Young v. Young,* 18 Minn. 90, Gil. 72; *State ex rel. Taubman v. Davis,* 199 Mo. App. 439, 203 S. W. 654; *Dawes v. Glasgow,* 1 Pin. (Wis.) 171. In *Yeagley v. Webb,* 86 Ind. 424, cited in the opinion of this Court in *O'Brien v. Pope,* 91 W. Va. 590, 114 S. E. 239, it was held that an attorney, who is a notary public, could administer an oath to his client, and that a verified answer in a cause should not be rejected because the affidavit was sworn to by the defendant before his attorney as notary public.

No statute of this State, or rule promulgated by this Court, disqualifies an attorney who, without more, represents his client in a pending case, from taking the affidavit of his client for use in the case. Neither is such action forbidden by any provision of the Canons of Ethics of the American Bar Association or the rules and the regulations of the West Virginia State Bar or the constitution and the by laws of the West Virginia Bar Association. It is common knowledge that the practice is widespread and of long standing among the members of the legal profession in this State. In *Richardson v. Ross,* 111 W. Va. 465, 163 S. E. 2, a plea in abatement was sworn to by the defendant before an attorney, who was a notary public, employed for the purpose of preparing and filing the plea in behalf of the defendant. The plea, which was rejected, was signed by the defendant but was not signed by his counsel and the jurat was not completed or signed by the attorney as notary public. In holding that the trial court erred in refusing to allow the notary public to "evidence the verification formally, and in striking out the plea" this Court said that, irrespective of any ethical question involved, the relation between the defendant and his attorney "did not invalidate his action as notary".

In the case at bar it does not appear that any prejudice resulted to the defendant, Edna Lockard, from the action of the attorney for the committee for William M. Ellison

in taking her affidavit as his client and in certifying the verification attached to the answer filed in her behalf. It is not shown that the attorney had any interest in acting as notary public in the transaction other than that which customarily results from the relation of attorney and client existing between him and the committee at the time he acted as notary public. In the absence of any statute or rule of court to the contrary, and irrespective of the propriety or the desirability of the practice, as to which no opinion is now required or expressed, an attorney at law, who is a notary public and also counsel for a party to a suit, but who has no interest in the transaction other than that which ordinarily arises from the relation of attorney and client, is not disqualified by law to administer an oath to his client for the purpose of verifying a pleading in the case or to certify the signature of his client in the verification appended to such pleading. The action of the court in permitting the answer of the committee, as verified, to be filed did not constitute error.

The contention of the defendant, Edna Lockard, that the court should not have permitted the answer of the bank to her replication to be filed, over her objection, more than fifteen days after its demurrer to the replication had been overruled, is not well founded. The statute upon which the defendant, Edna Lockard, relies, Code, 1931, 56-4-56 which requires a defendant to file his answer within fifteen days after his plea or demurrer to the bill of complaint of a plaintiff is overruled, unless for good cause shown the time is enlarged by the court, does not apply to an answer to a replication after the overruling of a demurrer to such replication. For this reason the plaintiff was entitled to file its answer to the replication before the entry of the final decree. See Code, 1931, 56-4-57.

On the question whether the deed of July 3, 1945, and the two deeds of trust were made with the intent to hinder, delay and defraud the defendant, Edna Lockard, as a creditor of William M. Ellison and J. M. Ellison, none of the parties introduced any testimony either in support of

or in opposition to her charge that these conveyances were fraudulent within the meaning of Code, 1931, 40-1-1, and should be set aside and canceled in so far as they adversely affect her claims as a creditor of William M. Ellison and J. M. Ellison. The facts bearing upon the issue of fraud, as against the bank, however, are established by the admission, and the insufficient denials, in the pleadings filed by the bank, of the charges of fraud contained in the answer and cross bill and in the amended and supplemental cross bill of the defendant, Edna Lockard, and by the failure of the defendant, J. M. Ellison, to answer her charges which as to him are taken for confessed.

The allegations in the bill of complaint of the bank show that it knew that William M. Ellison and J. M. Ellison were indebted to Edna Lockard in some amount for costs which had been awarded to her in the case of *Ellison v. Lockard,* 127 W. Va. 611, 34 S. E. 2d 326, decided by this Court May 1, 1945, and the mandate in which was certified to the Circuit Court of Calhoun County on July 3, 1945, the day on which the deed for all his real estate was made by William M. Ellison to J. M. Ellison, both of whom were parties to that suit. The bank also knew that, as a result of the decision of this Court in that case, its payment to William M. Ellison, administrator of the estate of W. A. Ellison, did not discharge the claim of Edna Lockard against it on account of the certificates of deposit owned by her as assets of the estate; that in consequence she was both a creditor of the bank and of William M. Ellison for the face amount of the certificates with interest until paid, and that the bank was, as it charged in its bill of complaint, at least a contingent creditor of William M. Ellison. It also knew that Edna Lockard claimed that William M. Ellison was indebted to her in a substantial amount on account of items of tangible personal property and United States Government bonds which she insisted she owned as assets of the W. A. Ellison estate and which she asserted he possessed and converted to his own use. It knew that she had accused it of having a part of these assets in its possession and that she had demanded that it deliver

them to her, which it had refused to do because, as reported to her and alleged by it, it did not have any of them in its custody or control. The bank also knew that J. M. Ellison was the son of William M. Ellison, and its information, upon which it relied, was that he owned only the surface of one tract of land of about eighty two acres, of the assessed value of only $800.00, that his personal property was of the assessed value of only $600.00, that William M. Ellison continued to live, as he had previously done, in the residence on the real estate conveyed by him to J. M. Ellison after he made the deed of July 3, 1945, and that the effect of that deed would be to hinder and delay the defendant, Edna Lockard, in the collection of her claims against William M. Ellison. The bank also had information, upon which it relied and acted, that William M. Ellison was insolvent at the time of the execution of the conveyance. Of all these facts the bank had notice, and it charged all of them in its sworn bill of complaint filed in this suit which it instituted for the purpose of setting aside as fraudulent the deed of July 3, 1945, by William M. Ellison to J. M. Ellison, in so far as it affected its rights as a creditor, and the rights of other creditors, of William M. Ellison.

In its special reply to the answer and cross bill of the defendant, Edna Lockard, and its answer to her replication, it undertook to change completely the position it had taken and assumed in its original verified bill of complaint. This it is not permitted to do. Its special reply and its answer constituted a clear departure from its original bill of complaint, 41 Am. Jur., Pleading, Sections 184, 185. If these pleadings had been challenged by demurrer they should have been rejected by the court. A party will not be permitted to assume inconsistent positions in the course of a suit with respect to the same facts. *Greenbrier Laundry Company v. Fidelity & Casualty Company of New York,* 116 W. Va. 88, 178 S. E. 631; *Central Trust Company v. Cook,* 111 W. Va. 637, 163 S. E. 60; *Ealy v. Shelter Ice Cream Company,* 110 W. Va. 502, 158 S. E. 781; *Clay County Bank v. Wilson,* 109 W. Va. 684, 158 S. E. 517; *MacDonald*

*v. Long,* 100 W. Va. 551, 131 S. E. 252. By failing to demur to these pleadings, by replying to them, and by proceeding to trial of the case on the merits upon these pleadings without objection, however, the defendant, Edna Lockard, waived her right to take advantage of the defects in the subsequent pleadings filed by the bank which existed because of the departure. 41 Am. Jur., Pleading, Section 392. See *Rogers v. Verlander,* 30 W. Va. 619, 5 S. E. 847; *Hartman v. Evans,* 38 W. Va. 669, 18 S. E. 810; *Williamson & Company v. Nigh,* 58 W. Va. 629, 53 S. E. 124; *City of Richmond v. McCormack,* 120 Va. 552, 91 S. E. 767.

By its admissions in its pleadings, which establish its knowledge of the fraudulent nature of the deed of July 3, 1945, its participation in the subsequent transactions which grew out of it, and its later dealings with William M. Ellison and J. M. Ellison, in connection with the deeds of trust and the loans made upon the strength of the security which it sought to obtain under them, all of which were based upon the deed of July 3, 1945, attacked by it under oath as fraudulent, the bank is convicted of fraud in hindering and delaying the defendant, Edna Lockard, in the collection of her claims against both William M. Ellison and J. M. Ellison, each of whom, without question and as the bank well knew, owed her the costs of $381.82 in prior litigation and for which she held a judgment against each of them. Admissions of fact in pleadings are binding and conclusive on the party who makes them. *Pettry v. Hedrick,* 123 W. Va. 107, 13 S. E. 2d 401; *Cobb v. Mortgage Security Corporation of America,* 115 W. Va. 83, 174 S. E. 697; *Clark v. Clark,* 70 W. Va. 428, 74 S. E. 234. As to J. M. Ellison, the fraud charged against him both by the bank in its bill of complaint and by the defendant, Edna Lockard, in her answer and cross bill and in her amended and supplemental cross bill, was established against him by his failure to file an answer denying the charge, by virtue of Code, 1931, 56-4-60, which provides that "Every material allegation of the bill not controverted by an answer, and every material allegation of new matter in the answer constituting a claim for affirm-

ative relief not controverted by a special reply in writing, shall, for the purposes of the suit, be taken as true, and no proof thereof shall be required." The quoted provision of the statute applies to a charge of fraud in a pleading which is not controverted by a proper denial, *Johnson v. Riley*, 41 W. Va. 140, 23 S. E. 698; and no proof by the defendant, Edna Lockard, of her charge of fraud against him was necessary or required. See *Miller v. Hawker*, 85 W. Va. 691, 102 S. E. 470.

As to the defendant, William M. Ellison, and his committee, however, with respect to the absence of evidence to establish the fraud charged against him in the pleadings filed by the bank and by the defendant, Edna Lockard, the situation is different. Before any answer was filed by or in behalf of William M. Ellison this suit was, on motion of the defendant, Edna Lockard, revived in the name of Rebecca Ellison, as his committee. The committee filed an answer in behalf of William M. Ellison, which denied some of the material allegations of the bill of complaint filed by the bank and of the answer and cross bill and the amended and supplemental cross bill of the defendant, Edna Lockard, and was sufficient to put her upon proof to sustain her allegations of fraud. See *Dickinson v. Chesapeake and Ohio Railroad Company*, 7 W. Va. 390. But even if the denials of the answer of the committee are not sufficient, or if the answer contains admissions detrimental or prejudicial to any right or interest of her ward, William M. Ellison, the allegations in the pleadings filed by the defendant, Edna Lockard, can not be taken for confessed against William M. Ellison or his committee, and the admissions of the committee detrimental to any right or interest of William M. Ellison can not have any binding effect upon him. See *Calloway's Committee v. Dinsmore*, 83 Va. 309, 2 S. E. 517; *Fox v. Starbuck*, 115 W. Va. 39, 174 S. E. 484. "No one may waive or admit away any substantial rights of, or consent to anything which may be prejudicial to, an insane litigant, and this rule embraces a general committee or guardian." 44 C. J. S., Insane Persons, Section 144 C; 32 C. J. 777.

This Court has said that the statute now embodied in Code, 1931, 56-4-60, does not apply to an infant for the reason that he is not competent to make admissions; that his guardian ad litem is not permitted to bind an infant by admissions in a pleading; that it is reversible error to decree against an infant upon a bill of complaint which is taken for confessed; and that averments in a bill of complaint which relate to the rights of an infant must be proved in the same manner as if they had been made against an adult and had been denied by answer. *Harrison v. Harman,* 80 W. Va. 68, 92 S. E. 460; *Glade Coal Mining Company v. Harris,* 65 W. Va. 152, 63 S. E. 873; *Crotty v. Eagle's Adm'r.,* 35 W. Va. 143, 13 S. E. 59; *Laidley v. Kline, Admr.,* 8 W. Va. 218. In *Childers v. Milam,* 68 W. Va. 503, 70 S. E. 118, this Court held: "Admissions in answers of adult defendants cannot bind infant defendants in the cause. A decree against the rights of infants standing only on these admissions must be reversed." In *Mills v. Dennis,* 3 Johnson, Chancery (N.Y.) 367, the Court said: "A decree cannot safely be obtained against an infant, upon the mere fact of taking the bill *pro confesso,* or upon an answer in form by the guardian *ad litem.* The answer in such cases generally is, that the infant knows nothing of the matter, and therefore, neither admits nor denies the charges, but leaves the plaintiff to prove them, as he shall be advised, and throws himself on the protection of the court." The rule which calls for proof of allegations against an infant, in principle and in logic, applies to allegations against an insane litigant, and requires them to be proved. Admissions in an answer of a committee or a guardian of an insane person are considered the same as those made by a guardian *ad litem* of an infant and can not be used against his ward. 32 C. J. 777, 44 C. J. S., Insane Persons, §144 C. Because of the total absence of proof, the allegations in the pleadings filed by the defendant, Edna Lockard, charging fraud against William M. Ellison, have not been established or sustained.

The defendant, Edna Lockard, vigorously asserts that the insanity of William M. Ellison has not been estab-

lished and she points to and relies upon the denial in her special reply to the answer of the committee that William M. Ellison is or was insane when the answer was filed and her allegation, on information and belief, that he is not insane. She also insists that the committee has failed to establish by any proof the insanity of William M. Ellison. These contentions are devoid of merit. In her special reply she does not deny the allegation in the answer of the committee that William M. Ellison had been found to be a mental defective and that Rebecca Ellison had been appointed as his committee by the County Court of Wood County. The record discloses, by recitals in the decrees entered in the cause on April 15, 1946, and April 17, 1946, that William M. Ellison, on account of his mental condition, had been adjudged by the Mental Hygiene Commission of Wood County, on November 15, 1945, to be "mentally incompetent"; that Rebecca Ellison had been appointed and had qualified as his committee, as "shown by the certificate herewith filed showing the appointment of the said Rebecca Ellison as such committee and her qualification as such committee"; that the committee suggested the "incompetency" of William M. Ellison; and that on motion of Edna Lockard, by her attorney, the cause was revived as to William M. Ellison in the name of Rebecca Ellison, committee for William M. Ellison. After the committee filed her answer on July 3, 1946, the cause, as revived, proceeded to final decree without objection by the defendant, Edna Lockard, to that course of procedure.

The statement in the record that William M. Ellison had been adjudged to be mentally incompetent means that he had been adjudged to be an insane person. No other reasonable meaning can be given to the words used. The statute provides that the words "insane person" shall include everyone who is an idiot, a lunatic, non compos or deranged. Code, 1931, 2-2-10 (n); *Hiett v. Shull*, 36 W. Va. 563, 15 S. E. 146. It is manifest that the words "mentally incompetent" indicate that the person so afflicted is non compos or deranged and for that reason is an insane person within the meaning of the statute.

Though the certificate referred to is missing from the record, the recital in the decree, in the absence of any proof to the contrary, establishes the appointment of Rebecca Ellison as committee for William M. Ellison, an insane person. It is well settled that recitals in a decree, though not conclusive, are presumptively correct and will prevail in the absence of record evidence which necessarily contradicts them. *Taylor v. Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Stepp v. State Road Commission,* 108 W. Va. 346, 151 S. E. 180; *State v. Bailey,* 85 W. Va. 165, 101 S. E. 169. There being no evidence in the record, or elsewhere, in contradiction of these recitals in the decree, they must be presumed to be true and correct and will be given that effect. The appointment by the County Court of Wood County of Rebecca Ellison as committee for William M. Ellison, having been established in the manner indicated, is not subject to collateral attack. *State ex rel Nutter v. Mace,* 130 W. Va. 676, 44 S. E. 2d 851; *Moore v. Coleman,* 126 W. Va. 815, 30 S. E. 2d 333; *Boone v. Boone,* 123 W. Va. 696, 17 S. E. 2d 790; *County Court of Marion County v. Jarrett,* 114 W. Va. 329, 171 S. E. 823; *State v. Thompson,* 100 W. Va. 253, 130 S. E. 456; *Doak v. Smith,* 93 W. Va. 133, 116 S. E. 691.

As the adjudication of William M. Ellison as an insane person and the appointment of Rebecca Ellison as his committee were sufficiently established, as already indicated, the testimony of the defendant, Edna Lockard, relating to personal transactions and communications between her and William M. Ellison was incompetent under Code, 1931, 57-3-1, which provides that no party to any action, suit or proceeding, no person interested in the event of such action, suit or proceeding, and no person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person who, at the time of such examination, is deceased, insane or lunatic, against the executor, the administrator, the heir-at-law, the next of kin, the assignee,

the legatee, the devisee, or the survivor of such person or the assignee or the committee of such insane person or lunatic. For that reason the circuit court properly excluded her testimony with respect to personal transactions between her and William M. Ellison.

The final assignment of error presented by the defendant, Edna Lockard, to the action of the circuit court in denying her claims of $5,793.33 for the various articles of personal property and of $10,000.00 represented by United States Government bonds in that amount, set forth in her answer and cross bill and in her amended and supplemental cross bill, aggregating, with interest, $18,320.26, is also without merit. The evidence introduced by her is clearly insufficient to prove either claim, in whole or in part. As to the claim of $5,793.33 for personal property, the only definite evidence offered consisted of the testimony of Edna Lockard with reference to the various items included in the claim and her statement that William M. Ellison had never paid any part of it. This evidence related to a personal transaction between her and William M. Ellison and, as already indicated, was clearly incompetent and inadmissible. Her evidence with respect to the bonds was also incompetent and inadmissable for the same reason. The testimony of the witnesses offered by her in support of her claim of $10,000.00 for government bonds alleged to be assets of the estate of W. A. Ellison taken and used by William M. Ellison and for which he had not accounted to her, was vague and indefinite. No witness ever saw any of the bonds in question, and no witness testified that William M. Ellison stated at any time that he had in his possession any bonds in any definite amount which belonged to W. A. Ellison or his estate. One witness testified that he heard William M. Ellison say on one occasion, the time and place of which he did not fix, that he had some of W. A. Ellison's government bonds but he gave no testimony as to the amount of the bonds. Another witness said that he heard William M. Ellison say at one time that he had $10,000.00 in bonds, but when

asked if Ellison had told him "who they belonged to", refused to give any answer to the question. Another witness stated that in 1942 William M. Ellison showed her a card indicating where he deposited his bonds, but when asked if Ellison had told the witness "whose bonds those were" answered: "No, he never said who they belonged to". Another witness who testified about the bonds stated that William M. Ellison told the witness that he had some bonds but that he did not tell him the amount of the bonds. The final witness to testify stated that on one occasion William M. Ellison told him that he had some bonds to take to Grantsville but that he did not tell him the amount of the bonds or anything more about them. The testimony of these witnesses constitutes all the admissible evidence offered by the defendant, Edna Lockard, in support of her claim of $10,000.00 for bonds which she charges William M. Ellison took from the estate of W. A. Ellison and for which he failed to account to her as the owner of the assets of that estate. This evidence is utterly insufficient to establish the claim and the action of the circuit court in disallowing it was clearly right.

The circuit court committed error in the final decree of April 23, 1947, in refusing to set aside as fraudulent, as to the plaintiff and the defendant, J. M. Ellison, the deed of July 3, 1945, from William M. Ellison to J. M. Ellison, and the two deeds of trust from J. M. Ellison to Lorentz C. Hamilton and Albert G. Mathews, Trustees, dated September 19, 1945, and October 1, 1945, respectively, for the benefit of the plaintiff, in so far as each of these conveyances affects the claim of the defendant, Edna Lockard, against J. M. Ellison for $381.82. For that reason and to that extent it is reversed and set aside, but in all other respects it is affirmed. As the reversal of the decree, in the manner and to the extent indicated, does not give the defendant, Edna Lockard, any relief beyond that afforded her by the decree of the circuit court, she can not be said to be the substantially prevailing party on this appeal and,

in consequence, she is not entitled to recover any costs in this Court.

The decree of the circuit court is reversed in part and affirmed in part, and this cause is remanded to that court with directions that it enter a final decree in compliance with the requirements set forth in this opinion.

> *Reversed in part;*
> *affirmed in part;*
> *remanded with*
> *directions.*

LOVINS, JUDGE, dissenting in part:

As an abstract statement of law, I agree with point 6 of the syllabus herein. However, I can not agree with the reasoning in the opinion of the Court that the law stated in point 6 of the syllabus is applicable to the facts presented by the record in this case. In other words, I think that Edna Lockard was qualified to testify as to her transactions with William M. Ellison. In that respect this opinion is written.

At common law a person interested in the outcome of an action, suit or proceeding was under a disability to testify as a witness therein. But such disability, with certain exceptions, has been removed by statute. Code, 57-3-1. One of the exceptions to the curative effect of Code, 57-3-1, relates to the capacity of interested persons to testify "in regard to any personal transaction or communication between such witness and a person at the time of such examination, * * * insane or lunatic". As to such testimony, the common law disability still exists. See *Bank v. Hulme,* 117 W. Va. 790, 793, 188 S. E. 225. It is on this exception that point 6 of the syllabus is based.

The general purposes of Code, 57-3-1, have been reviewed by this Court on numerous occasions. It has always been held that the object of that statute is to widen, not to narrow, the competency of witnesses. *Crothers v. Crothers,* 40 W. Va. 169, 174, 20 S. E. 927. It removes, but

does not create, disabilities. *Gilmer v. Baker,* 24 W. Va. 72, 84; *Anderson v. Snyder,* 21 W. Va. 632. And the statute should be liberally construed to the end that these beneficial objectives be accomplished. *Seabright v. Seabright,* 28 W. Va. 412, 462.

It is my opinion that a liberal construction of Code, 57-3-1, so as to effectuate the general purposes and objectives heretofore stated, requires that the exceptions therein contained be subject to a strict interpretation. Accordingly, I believe that nothing short of a showing that William M. Ellison was "insane or lunatic" at the time of the examination of Edna Lockard, can disqualify her to testify regarding the same.

However, the proof adduced herein, which is based solely on the order of the County Court of Wood County, shows only that William M. Ellison had been declared "mentally incompetent." Such is a flimsy factual basis for proof of mental incompetency. But it begs the question to conclude therefrom, as does the opinion of the Court, that: "The statement in the record that William M. Ellison had been adjudged to be mentally incompetent means that he had been adjudged to be an insane person. No other reasonable meaning can be given to the words used. The statute provides that the words 'insane person' shall include everyone who is an idiot, a lunatic, non compos or deranged. Code, 1931, 2-3-10 (n) ; *Hiett v. Shull,* 36 W. Va. 563, 15 S. E. 146. It is manifest that the words 'mentally incompetent' indicate that the person so afflicted is non compos or deranged and for that reason is an insane person within the meaning of the statute."

Code, 2-3-10 (n), cited by the majority, merely states that the words "insane person" include one who is non compos or deranged. The case of *Hiett v. Shull, supra,* defines insanity, but by no means is authority for the proposition that a mentally incompetent person is insane.

In my opinion, the words "mentally incompetent" are far short of being synonymous with the words "insane and lunatic". To be sure, an insane person or a lunatic is also mentally incompetent. But it does not necessarily follow that a mentally incompetent person is either insane or a lunatic. Mental incompetency may be the temporary result of the use of drugs, or the addiction to the use of intoxicants. It may connote senility, weakness of mind, or mental immaturity. Or it may result from emotional instability. But none of these conditions or results implies insanity or lunacy. See *Anderson v. State* (Ariz.), 96 P. 2d 281; *Johnson v. Millard* (Neb.), 195 N. W. 485, 487; and *In re Des* Granges' Estate (Cal. App.), 283 P. 103, 105, wherein these distinctions are discussed and applied.

Since the creation of this State, legislative enactments have recognized the distinctions, hereinbefore made, between an insane person and one who is merely a mental defective. Chapter 27, Code of 1931, dealing with the subject, is entitled "Insane Persons and Mental Defectives". Code, 27-8-3, originally enacted in 1921 and last amended in 1937, clearly demonstrates the more recent and continued intention of the Legislature to distinguish between the two phrases, by stating: "There shall be admitted to * * * [West Virginia Training School] * * * any person with mental defectiveness from birth or from an early age, so pronounced that he or she is unable to care for himself or herself and manage his or her affairs with ordinary prudence, and who, because of such mental defect, is a menace to the happiness and welfare of himself or herself, or of others in the community, and requires care, training or control for the protection of himself or herself or of others, *and yet who is not insane.* This type of person, commonly classed as feebleminded, including idiots, imbeciles, or morons, shall be known and designated as 'mental defectives' * * *." (Emphasis supplied). This distinction is discussed and explained in *In re: Wood,* 123 W. Va. 421, 424 *et seq.,* 15 S. E. 2d 393.

Therefore, it seems imperative to me to conclude that the word "insane", as used in the exception stated in Code, 57-3-1, does not include a "mental incompetent".

Although the opinion of the Court makes no effort to state that a person who is "mentally incompetent" is a "lunatic", it is well to point out that, by legislative enactment, "The word 'lunatic' * * * shall be construed to include every insane person who is not an idiot." Code, 27-1-1. Accordingly, the distinctions between a "lunatic" and a "mentally incompetent" person are the same as those between an "insane person" and one who is "mentally incompetent."

Accordingly, I am of opinion that Edna Lockard may testify as to her transactions with William M. Ellison, and I think the opinion of the Court is erroneous in that respect. It follows that under my view of this case, it is unnecessary to discuss and decide the legal proposition stated in point 7, as well as point 6, of the syllabus, although I agree that if William M. Ellison is in fact and law insane or lunatic that the said syllabus points are correct.

Furthermore, William M. Ellison, not having been shown to be insane, is subject to the same rules relative to admissions contained in pleadings as any other sane litigant.

For the aforesaid reasons, I respectfully dissent in part from the Court's opinion.